HYATT vs. BATES and others, Commissioners of Highways of the town of Benton.

Where a matter presented for adjudication has been once tried, before another tribunal having jurisdiction of the subject and proceeding by regular process, and has been determined against the plaintiff, the question is *res judicata*, as to any new action involving an examination and determination of the same identical questions.

The principle that a matter once considered and decided by a competent power shall not be reviewed by any other tribunal having concurrent power, except in the regular course of error or appeal, applies to the certificate of a jury, duly summoned under the statute, finding the existence of an encroachment upon a highway.

A court of equity has no right to inquire into the proceedings of subordinate tribunals of special or local jurisdiction, with a view of setting them aside if void at law, or for the purpose of staying or restraining such proceedings. The proper remedy which the law gives the party is a review of the proceedings by common law certiorari.

It does not follow that because an error of an inferior tribunal may not be corrected by a common law certiorari, it is therefore a case for equitable interposition. *Per* JOHNSON, J.

APPEAL from an order made at a special term, ordering judgment for the defendants upon a demurrer to the complaint, and directing the complaint to be dismissed with costs.

The complaint alleged that, on or about the year 1831, the plaintiff purchased and entered into the possession of the south half of lot number seventy-one, in township number eight, first range of townships in Phelps and Gorham's purchase, and has been in the actual occupation of the said premises ever since, and is still in the occupancy and possession thereof; that at the time he purchased and took the possession of said land, a road or highway was opened and used along the south line of said premises, running east and west; that a fence ran the entire length of the south side of said premises adjoining said road; that said fence, from the time the plaintiff entered into the possession of said farm, has been, and still is, substantially in the same place where it stood when he took possession of said farm; that said fence

at no time for the last twenty-seven years stood any further north on the said premises than the same now stands; that a portion of said fence has at various times stood further south, and has been removed to the north where the same now stands; that no part of the land under the said fence, or within the inclosure of the plaintiff, has at any time since the plaintiff has owned and possessed the premises, been used or formed any part of the road or highway; that at the time he took the possession of said premises, the corner stakes of the lot had been removed, and all the line trees along the south line of said premises had been destroyed and removed, so that there were not any marks or monuments designating said line or where said line run, and the only evidence which the plaintiff had of the boundaries of the premises on the south side, was the fence as it then stood and has remained ever since; that at the time he took the possession of said premises, he took the possession thereof as owner in fee, claiming all the land lying on the north side of said fence, including the land upon which said fence stood and still stands, and has at all times since he so entered into possession claimed to be the owner of the whole of the premises included within his inclosure, and at no time has he recognized any right in the public or any other person to any part of the premises so included in his inclosure; that the defendants, claiming to be acting as commissioners of highways of the town of Benton, in the county of Yates, on or about the seventh day of May, 1860, made an order which, in substance, among other things, found and decided that the fence of the plaintiff on the south line of his premises encroached upon the highway aforesaid, as follows: at the south east corner to the extent of one foot; at a point in front of David L. Becker's dwelling house at a stake, to the extent of nine and 8-10ths feet; and at the southwest corner of the premises of this plaintiff, to the extent of three and 9-10ths feet; and that all that narrow strip or piece of land which lies under the said rail fence, between the said line and a right line from the southeast corner to

the southwest corner aforesaid, was a part of said highway; and in and by said order, directing that the said rail fence be removed, so that said highway be of the width originally intended, which in and by said order was alleged to be three rods, a copy of which said order was served upon the plaintiff, on or about the said seventh day of May, together with a notice, signed by the defendants as commissioners of highways, directed to the plaintiff, requiring him to remove his fence, mentioned and described in said order, within sixty days after service of said notice; that after the said order and notice had been served upon him, and within five days from the time of the service of said order and notice, the plaintiff served a notice in writing upon the defendants, as such commissioners of highways, denying the encroachment mentioned in said order; that afterwards, James Durham, one of the justices of the peace of the town of Benton, on the application of the defendants, or some one of them, issued a precept for a jury, to a constable of the said town of Benton, commanding said constable to summon twelve freeholders of said town to appear at the tavern of J. P. Tyler, in said town of Benton, on the 22d day of May, 1860, at 10 o'clock A. M., to inquire into said encroachment, of which the plaintiff was duly notified; that on the said 22d May, 1860, the plaintiff and the defendants appeared at the place appointed for the meeting of said jury, and the said justice also appeared, and the constable to whom the precept had been issued and delivered, returned the same with the panel of the names of twelve freeholders of said town thereunto annexed, and the said jury so summoned, on being called, all duly appeared and were sworn by the justice to inquire into the alleged encroachment, and if any, by whom made. The complaint then set forth the proceedings had before the justice and jury, which terminated in the making and signing of a certificate by the jury, by which they certified that an encroachment had been made upon the highway by the plaintiff, and that a certain strip of land therein described was a part of the

Hyatt v. Bates.

public highway. The complaint further alleged that the jury in making said certificate and finding, acted upon and were wholly governed by the rule of law contended for on the part of the commissioners, and placed their finding solely upon the ground that there was no limitation as to the right of the commissioners, and that it made no difference whether the land claimed as a part of said highway had ever been used as a part of the highway or not; that the commissioners had a right to cause the fence to be removed one and a half rod from the centre line of said road, as run by them, although the fence had stood more than twenty years in its present place. The plaintiff insisted that the said certificate and finding of the jury was wholly insufficient, void and uncertain, for that the jury had omitted to find by whom the encroachment was made, whether made by the plaintiff or the former occupant; and for that the certificate finds "that said highway three rods wide," without mentioning whether the said road is now three rods wide or was originally intended to be of the breadth of three rods. The plaintiff also insisted that there being no record of the original laying out of said road by the commissioners of highways designating the width of said highway, and there being no proof before the commissioners at the time of the making of said order, that the premises claimed in and by said order as being a part of the highway, had at any time ever been used or occupied as a part of said highway, they, the commissioners, in making the order, acted without authority and jurisdiction; that before they could have any right or authority to make said order, there should have been some evidence that the road had been encroached upon within twenty years next preceding the making of said order. The plaintiff further alleged that, before the making of said order by the commissioners, he proposed to them, and offered to prove to their satisfaction, that there had been no encroachment upon said road, and that the fences of the plaintiff, for the last twenty-seven years, had stood and remained where the same stood at the time of making the order,

and requested the defendants as such commissioners, if they insisted upon making said order, to insert the fact in said order that the fence of the plaintiff had at no time, for the last twenty-five years and upwards, stood further to the north of the center line run by said commissioners than at the present time; which offer and request the commissioners refused to comply with, or to state said facts in their order; they insisting that there was no limitation as to time. That the plaintiff has by his counsel frequently requested the defendants, as such commissioners of highways as aforesaid, to in some way or manner agree upon a case, and have the question of law in regard to the limitation aforesaid, settled and determined by this or some other competent court, which the defendants decline to do. That the defendants threaten to enforce the said order and certificate, and finding of the jury, and compel the plaintiff to remove his fence to the line designated by them in their said order; and that in case the plaintiff should refuse or decline to obey said order, they, the defendants, as said commissioners, will prosecute him for the penalty given by the statute in such case made, and also to institute proceedings before the said justice, to compel the plaintiff to pay the costs and expenses of the said hearing and proceedings, so had before the said justice and jury. That the fence required to be removed by the said order is over two hundred rods in length; and the costs and expenses of removing the same will exceed the sum of $20, besides depriving the plaintiff of the use and enjoyment of about one half acre of land, which he has held and enjoyed as owner in fee for more than twenty-five years. That in consequence of said illegal and improper proceedings of the defendants as such commissioners of highways, he, the plaintiff, has been compelled to lay out and expend, including his time, the sum of $50, in and about defending himself against the said unfounded, illegal and improper proceedings of the defendants, and has sustained damages in the whole amounting to over the sum of $100, which the plaintiff claimed and insisted

that the defendants should be adjudged to pay to him. The plaintiff then averred, that at and by the strict rules of the common law, he was wholly remediless, and could only obtain adequate relief in a court having equitable powers and jurisdiction, where matters of the like nature are strictly cognizable and relievable. Wherefore he prayed for an order restraining and enjoining the defendants, their agents, and all persons acting under them, or by authority, or by their directions, from attempting in any way or manner to enforce a compliance with said order and certificate, and finding of said jury, and from collecting, or attempting to collect, and enforce the payment of the costs and expenses of the said proceeding before the jury, and from in any way or manner interfering with the fence mentioned in said order, or the land and premises therein mentioned and described, until further order of the court. And he demanded judgment that the defendants, as commissioners of highways, and their agents, and all persons acting under or by their authority or directions, be perpetually restrained and enjoined from enforcing said order, or the finding and certificate of the jury, and from in any way collecting, or attempting to collect, the costs and expenses of said proceedings before the jury, and from attempting to compel the plaintiff to remove his fence mentioned in said order, and from taking possession of, or attempting to take possession of, the strip of land mentioned and described in said order as being a part of the highway, and that the right of the plaintiff in and to the premises might be settled and adjudged by this court, and the plaintiff be protected in the possession and enjoyment of his said lands and premises; and for costs, and general relief.

The defendants demurred to the complaint, and assigned the following grounds of demurrer: *First.* For that it appears upon the face thereof that the court has no jurisdiction of the subject of the action. *Second.* That it appears upon the face of the complaint that the plaintiff has not legal ca-

pacity to sue; for the subject matter of this action has heretofore been submitted to a competent tribunal, to hear and determine the same, by the parties of this action; and said tribunal did hear and determine the same; which determination now remains of record, and is a valid and binding adjudication of the subject of this action. *Third.* That it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action.

The following opinion was given by the justice who heard the cause at special term:

E. DARWIN SMITH, J. "The plaintiff shows by his complaint, that when he purchased and went into possession of his farm in 1831, a road or highway was open and used along the south line of his premises, and that it was then fenced, and has so remained since that time. This being in use, confessedly, as the public highway in the town of which the defendants are commissioners, and such highway having long been in use, the defendants had jurisdiction of the road, and of the subject of encroachments thereon. The proceedings taken by them to remove encroachments was within their powers and duties. They had jurisdiction of the subject matters, and the appearance of the plaintiff on due notice, and his contestation of the question of the encroachment, gave the jury jurisdiction over his person also, so as to bind him by the decision then made. If there was any error in the proceedings, or any error in respect to the jurisdictional facts, authorizing the defendants, or the justice, or the jury to proceed, they can be reviewed by *certiorari*, and corrected in such proceedings. But assuming that there are errors which cannot be reached in that way, I think this suit still ought not to be sustained. I am by no means satisfied that this court would disclaim jurisdiction to rectify or review essential and fundamental errors committed in the prosecution of. such proceedings, when they could not be reached by *cer-*

Hyatt *v.* Bates.

*tiorari*. On the contrary, in a proper case, I have no doubt that the court would entertain the suit, and see justice done. If there would otherwise be a failure of justice, it would be the duty of the court to contrive and afford a remedy, as part of its original duty and jurisdiction to give a remedy for wrongs and injuries when the courts of law are inadequate to give redress. But this case is not one of sufficient conse- quence, even though errors may have intervened, to entitle the plaintiff to come into a court of equity for relief. All the damages which the plaintiff states he will receive from the proceedings referred to, will be $20 for the expenses of removing his fence, and the use of half an acre of land, which will be taken into the road by the alteration. What the value of this use would be is not stated, but it would ob- viously be a small amount, and the fee of this half acre prob- ably is not worth over $20 or $25. The fee remains in the plaintiff, and he will merely lose its use. I cannot think the court ought, if it has the power, to entertain a suit in equity when the amount involved *is so small.* But under the pro- vision of the revised statutes, (§ 37, *art.* 2, *ch.* 1, *part* 3,) it was made the duty of the court of chancery to dismiss every suit concerning property, where the matters in dispute, exclusive of costs, does not exceed the value of $100. This statute is still in force, and applies to this court as a court of equity. This has recently been decided in the 6th district at general term in *Marsh* v. *Benson,* (19 *How. Pr. Rep.* 415,) where the question was very carefully considered. That de- cision I ought to follow, certainly at special term.

The defendants should therefore have judgment upon the demurrer, with costs."

Judgment was accordingly ordered for the defendants, upon the demurrer to the complaint, and the complaint dismissed with costs, on the grounds specified in the demurrer, and upon the further ground that the complaint shows that the matter

in controversy does not exceed the value of $100, exclusive of costs.    The plaintiff appealed.

*D. B. Prosser*, for the appellant.

*D. Morris*, for the respondents.

*By the Court*, JOHNSON, J.    It is apparent upon the face of the complaint, that the precise matter presented for adjudication in this action has been once tried before another tribunal, and determined against the plaintiff.   That the tribunal before which the matter was so tried had complete jurisdiction of the subject, and proceeded by regular process, cannot well be denied.   It is a tribunal created by statute, for the express purpose of trying and determining just such matters, and no other.   I do not see, therefore, why the question is not *res judicata*, as to any new action involving an examination and determination of the same identical questions. For, conceding for the moment, the jurisdiction of a court of equity in such a matter, the tribunal which has already had the matter before it, and made its determination upon it, had at least concurrent and equal jurisdiction therein.   This being so, the principle that a matter once considered and decided by a competent power shall not be reviewed, by any other tribunal having concurrent power, except in the regular course of error or appeal, applies with full force to this case. And this principle, as Chancellor Kent said in *Simpson* v. *Hart*, (1 *John. Ch.* 91, *at p.* 98,) does not rest upon the mere technical form of the decision.   " It is the unfitness and vexation and indecorum of permitting a party to go on successively by way of experiment, from one concurrent tribunal to another, and thus to introduce conflicting decisions, that prevents a second inquiry."   It is a settled principle of equity never to interfere, in such cases.   (*Simpson* v. *Hart, supra.   Holmes* v. *Remsen*, 7 *id.* 286.)

Hyatt *v.* Bates.

The certificate of the jury, finding the incroachment, is conclusive of the fact, as between the owner of the land and the commissioners of highways, for some purposes at least, and I do not see why not for all purposes, until such finding is reversed, in the regular course of review, upon error or appeal. (*Bronson* v. *Mann*, 13 *John.* 460.)

But I am clearly of the opinion that the subject matter of the action is not, in any view, matter of equitable cognizance, and does not fall under any recognized head of equity jurisdiction. This it seems to me is clearly shown by the case of *The Mayor &c. of Brooklyn* v. *Meserole*, (26 *Wend.* 132.) That was the case of the widening of a certain street, and the bill was filed to restrain the authorities from proceeding to widen the street, and to set aside the proceedings authorizing it, as illegal and void. The decree of the chancellor, in that case, was reversed, upon the express ground that chancery had no jurisdiction over the proceedings. The opinion of Chief Justice Nelson clearly demonstrates that it was no case for the interposition of an equitable tribunal. To the same effect, also, is the case of *Heywood* v. *The City of Buffalo*, (14 *N. Y. Rep.* 534.) See also *Thatcher* v. *Dusenbury*, (9 *How. Pr. R.* 32,) which was a suit in equity, to restrain the commissioners of highways from opening certain roads laid out by them, and to have their proceedings in laying out the same declared null and void. It was there held, very properly as I think, that it was no case for the interposition of equity. Many other cases might be cited, were it necessary, all going to establish the proposition that a court of equity has no right to inquire into the proceedings of subordinate tribunals, of special or local jurisdiction, with a view of setting them aside if void at law, or for the purpose of staying or restraining such proceedings. The only remedy which the law gives the plaintiff is a review of the proceedings by common law certiorari.

The plaintiff's counsel insists that this would afford no

means of redress, inasmuch as the return would not bring up the whole proceeding, so as to show the errors complained of. But it would bring up all questions touching the jurisdiction of the inferior tribunal, and all the evidence, and facts, bearing upon such questions. (*People* v. *Goodwin,* 1 *Seld.* 568. *People* v. *Van Alstyne,* 32 *Barb.* 131.)

It would not, however, bring up questions arising upon the evidence, or mere errors in the finding of the jury thereupon, not touching their jurisdiction to entertain and decide the matter before them. The court would not, for instance, look into or pass upon the alleged errors on the part of the jury in finding the encroachment, notwithstanding the evidence of the plaintiff's adverse possession.

But it does not by any means follow, that because an error of that description may not be corrected by a common law certiorari, it is therefore a proper case for equitable interposition.

A conclusive answer to any suggestion of that kind is that given by the court, in *Birdsall* v. *Phillips,* (17 *Wend.* 464:) " If they go wrong upon the evidence, it is the misfortune of the parties. The object of the law is to give them final powers over the merits, upon the light class of litigation which it confides to them." The proceedings of the inferior tribunal here do not necessarily lead to a multiplicity of actions, nor in their execution, to the commission of an irreparable injury ; nor do they cast any cloud upon the plaintiff's title, in any legal sense in which those terms are used, for the purpose of taking the case out of the general rule, and conferring jurisdiction upon a court of equity. (*See Heywood* v. *The City of Buffalo,* 14 *N. Y. Rep.* 540, 541.) It is not the policy of the law to afford the means of correcting every conceivable error, in legal proceedings ; especially those that occur in the proceedings of the various tribunals of inferior and local jurisdiction, upon the comparatively trivial and unimportant matters committed to them. It very properly looks

to an end to litigation upon every question, irrespective of errors, and determines when and where the means of redress shall cease, upon every subject of litigation.

I think the order of the special term was right, and should be affirmed.

Order affirmed.

[MONROE GENERAL TERM, December 2, 1861. *Welles, Smith* and *Johnson,* Justices.]