## RHODES ET AL. *v.* PIPER ET AL.

TURNPIKE.—*Assessment.—Articles of Association.—Name.—*Piper *v.* Rhodes, 30 Ind. 309, reviewed and adhered to.
SAME.—*County Commissioners.—Estoppel.—*An application by a turnpike company for the appointment of appraisers to assess benefits to lands, under the

act of March 11th, 1867, can only be made by a company organized under the act of May 12th, 1852, and the county commissioners are not required, when such application is made, to ascertain and determine, as a jurisdictional fact, whether the company has been duly and legally organized; and, consequently, persons whose lands have been assessed are not concluded by such finding if made.

APPEAL from the Fayette Circuit Court.

BUSKIRK, J.—This is the second time that this case has been in this court. It is reported in 30 Ind. 309. We refer to the reported case for the statement of the case and the questions decided. The case comes here this time upon the same identical facts, and presents for our decision the precise questions of law that were involved when it was here before.

The learned counsel for the appellant insist that when the case was formerly here it did not receive a full and careful consideration, and that consequently the court erred in its conclusions upon the law.

This was a proceeding to enjoin the collection of an assessment for the construction of a gravel road, made under the act of March 11th, 1867. The injunction was sought upon the ground that the company had not been legally organized. The objection to the organization was, that the company had not assumed any name. It was said by this court, in this case, in reference to the name: "The defect in the articles of association is the omission of the corporate name. It is claimed that the heading, 'Fairview Turnpike,' is a sufficient compliance with the requirement of the statute in this respect. We think otherwise. It does not profess to be the name of the company."

It was further said by the court: "It is claimed that the order of the board of commissioners appointing the assessors, not appealed from, is conclusive on the complainants. There must be a corporation to authorize the collection of assessments. Without this prerequisite the order of the commissioners is a nullity."

We are now asked to overrule the former opinion of this court, in this case, on two grounds. The first is, that it is

Rhodes *et al. v.* Piper *et al.*

sufficiently shown by the articles of association that the company assumed a corporate name. We are of the opinion that the former ruling of this court, on this point, was correct. The language of the statute is so plain as to leave but little room for doubt or construction. A company can be organized only on the following conditions: "They shall unite in articles of association, setting forth the name which they assume, the line of the route, and the place to and from which it is proposed to construct the road, the amount of capital stock, and the number of shares into which it is divided, the names and places of residence of the subscribers, and the amount of stock taken by each, shall be subscribed to said articles of association." 1 G. & H. 474, sec. 1.

We are clearly of the opinion that it is not only necessary that a corporate name should be assumed, but that the name thus assumed should be set forth in the articles of association. This was not done in the case under consideration.

The second position assumed by the counsel for appellant is, that the act of the board of commissioners appointing the assessors was a judicial act, and necessarily determined judicially that the Fairview Turnpike Company was an organized gravel road company, under the act of May 12th, 1852, with the other facts necessary to authorize the assessment under the act of March 11th, 1867, and that this determination is conclusive, except on appeal, and cannot be questioned collaterally. And in support of this position, reference is made to two recent decisions of this court, in addition to the authorities heretofore referred to and considered by this court on the former hearing, and they are *Green* v. *Beeson*, 31 Ind. 7, and *The State, ex rel. Waggoner,* v. *Needham,* 32 Ind. 325.

The case of *Green* v. *Beeson, supra,* was a proceeding to enjoin the collection of taxes, upon the ground that the company had not been legally organized, and therefore had no legal right to make an assessment. The same position was assumed in that as in this case, in reference to the force and

effect of the action of the board of commissioners. This court say: "But it is urged, that the board of commissioners having permitted the organization of the turnpike company, the matter is not longer open to inquiry. This position is untenable. The commissioners were in the exercise of a special statutory power; they must execute that power as it is given; they cannot exercise it in disregard of the statute which confers it, and especially where that statute expressly forbids them to do so; and any attempt of the kind is a mere nullity, binding nobody. A judicial proceeding where parties have a right and opportunity to be heard is very different; and in such a case a judgment which the tribunal has jurisdiction to render will bind, though it be erroneous. But in the case before us, as stated in the complaint, the commissioners had no jurisdiction to authorize the corporation. The proceeding before them was *ex parte;* nobody was required to be notified. It would be monstrous if action had under such circumstances should be held to conclude further inquiry."

It was further held, in the above case, that, "a petition by the owners of three-fifths of the real estate lying within three-fourths of a mile on each side of the proposed turnpike, stating its location and length and their desire to construct it, is all that is required to evoke the action of the tribunal."

The case of *The State, ex rel. Waggoner,* v. *Needham, supra,* was a proceeding by information under the code, for an alleged unlawful exercise of corporate powers in the construction of a gravel road. There were two grounds upon which it was claimed that the appellees were not a legal corporation. The court say: "The first is, that the petition to the county commissioners was not subscribed by the owners of, or persons representing, three-fifths of the real estate three-fourths of one mile on each side of the road.

"Under the act of 1865, the county commissioners, as a court, passed upon this question, and their judgment is conclusive in a proceeding like the one under consideration.

"It is a well settled principle, that where the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision is conclusive, except in a direct proceeding to reverse or set aside the judgment. *The E., I., & C. Straight Line Railroad Co.* v. *The City of Evansville*, 15 Ind. 395; *The Board of Comm'rs of the County of Knox* v. *Aspinwall*, 21 How. U. S. 539."

The other ground was that certain persons, whose names were signed to the petition, did not sign or authorize their names to be signed thereto; and that certain other persons whose names were signed did not own the land taxed to them. This court held that the certificate of the auditor, required by the act of 1865, was evidence before the board, and that the presumption was that the petitioners appeared in person before the board when the petition was presented, and that the information did not negative the fact of such appearance; that if they so appeared, it is matter of indifference whether they actually signed the petition or not, so their names were appended thereto; and that it did not appear that the omission of the names complained of would have changed the result.

We entertain no doubt as to the correctness of the ruling in the above case, as applied to the facts of that case; but we are clearly of the opinion that it has no application to the case under consideration.

Under the first section of the act of March 6th, 1865, two questions of fact had to be decided by the board of commissioners, upon which the jurisdiction of that tribunal depended; and they were, first, that the persons whose names were signed to the petition represented over three-fifths of the real estate three-fourths of one mile each side of the proposed road; and, second, that the road was of public utility. The right to determine that the road was of public utility, and to grant the right of the highway petitioned for, depended upon whether they found that it was true, as a question of fact, that the persons whose names

were signed to the petition represented over three-fifths of the real estate within three-fourths of a mile each side of the proposed road. This question of fact the board of commissioners was required to ascertain and settle by its decision before the board acquired jurisdiction to act in the premises. This brings it clearly within the well-settled rule above stated. It should, however, be observed, that the decision of the court is only conclusive where the fact found was essential to the jurisdiction of the court. The conclusiveness of the finding does not extend to any fact not required to be found to confer jurisdiction. See the cases above cited.

The cases of *Green* v. *Beeson,* and *The State, ex rel. Waggoner,* v. *Needham, supra,* were decided under the act of March 6th, 1865, while the case under consideration is governed by the act of March 11th, 1867.

There is a wide and marked difference between the two acts. The first and second sections of the act of March 6th, 1865, read as follows: '

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That any number of persons owning more than three-fifths of the amount of real estate, as shown by the books of the county auditor, or counties, in which the proposed road is to be constructed, may make, by written petition to the board of county commissioners in which their realty is located; and if they show by the appraisement of their real estate, certified by the county auditor of the county in which their realty is situated, that such persons represented over three-fifths of the real estate, three-fourths of one mile each side of the proposed macadamized, gravel or plank road—the persons making the application stating in writing, to the county board, or counties, as the case may be, their desire to construct a macadamized, gravel or plank road, giving the starting point, terminus, the distance in miles, the highway, as recorded as such, or the route in which they proposed to construct the said road; and if the county commissioners shall deem the road of public utility, they

shall grant the applicants the right of the highway petitioned for as the property of the association.

"SEC. 2. The persons making the application, after receiving from the county commissioners a permit according to this act, can organize themselves into a company, elect such officers, make by-laws and rules for their action as is lawful and proper, under the name they choose in their articles of association."

The first section and so much of the second of the act of March 11th, 1867, as is necessary to fairly present the question, read as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That any organized plank, macadamized or gravel road company, under and pursuant to the provisions of an act of the General Assembly of the State of Indiana, entitled 'an act authorizing the construction of plank, macadamized and gravel roads,' approved May 12th, 1852, having a subscription of at least eight hundred dollars per mile of such proposed road, and not having a sufficient amount for the construction and completion of the same, may petition the board of commissioners of the county or counties through which such proposed road is or may be located, for the appointment of three disinterested freeholders of the county or counties, to assess the amount of benefit to each tract of land within one and one-half miles of such road on either side thereof, or within the like distance of the terminus thereof.

"SEC. 2. It shall be the duty of such board of commissioners to appoint three disinterested freeholders of the county for the purpose of making such assessment, and to cause the auditor of the county to notify them of their appointment, and of their duties under such appointment," etc.

The act of 1865 is an independent act, intended to be perfect and complete within itself, and was not supplementary to the act of May 12th, 1852. The first requirement is that a number of persons owning more than three-fifths of the amount of the real estate in the county or counties in which

their proposed road is located, may file a written petition in the commissioners' court of the county where such lands are situated. The second is, that the petitioners must show that they represent over three-fifths of the real estate three-fourths of one mile each side of the proposed road. The third is, that the petition must contain a description of the proposed road as therein required. The fourth is, that the petitioners must show, to the satisfaction of the board of commissioners, that the proposed road is of public utility. And when these things have been done, the commissioners may grant the applicants the right of highway as petitioned for. Then it is provided by the second section, that after the county commissioners have granted the permit according to that act, the petitioners may organize themselves into a company, elect such officers, make by-laws and rules for their action, as is lawful and proper, under the name they choose in their articles of association.

Under the act of 1865, a company could not be organized until the board of commissioners granted permission, and the board of commissioners could not grant such permission until they had found as questions of fact, that the persons who signed the petition represented three-fifths of the real estate three-fourths of a mile each side of the proposed road, and that such road was of public utility. Until these two facts are found, the board of commissioners possessed no power to grant the right of highway, or do any other act in the premises. The finding of such facts was essential to the exercise of any jurisdiction, and consequently came within the principle stated, that such facts when so found were conclusive.

The fact found in the case of *The State, ex rel. Waggoner,* v. *Needham, supra,* was that the petition filed was subscribed by persons representing three-fifths of the real estate three-fourths of a mile on each side of the road. As we have seen, the finding of such fact was essential to the exercise of jurisdiction, and that consequently the court held very properly that such finding was conclusive.

This court, in *Green* v. *Beeson, supra,* held that the finding

and decision of the board of commissioners, on the points required to be found, would probably be conclusive when questioned collaterally.   But the point in that case was whether the road was five miles long; and on that point, the court say:   "But that the length of the road proposed to be constructed shall be five miles, is not a matter to be decided before authority shall be given to form the corporation."

Again it is said: "But after the corporation is created, a restraint is imposed upon its action by the eighth section of the act.   It cannot make less than five miles of road."   The court therefore held that, as the board of commissioners were not required to find, as a condition precedent to the creation of the corporation, that the road was five miles long, such finding was not conclusively binding in a collateral proceeding; and the court further held, that as it was shown in such action, that the road was less than five miles long, there was no legal corporation, and enjoined the collection of the taxes imposed.

The act of March 11th, 1867, is supplemental to the act of May 12th, 1852.   It is provided in the first section of said act, "that any organized plank, macadamized or gravel road company, under and pursuant to the provisions of an act of the general assembly of the State of Indiana, entitled 'an act authorizing the construction of plank, macadamized and gravel roads,' approved May 12th, 1852, having a subscription of at least eight hundred dollars per mile of such proposed road, and not having a sufficient amount for the construction and completion of the same, may," etc.

Under the above act an application cannot be made to the board of commissioners for the appointment of appraisers by any but a company organized under the act of May 12th, 1852.

The board of commissioners is not required, when the application is made for the appointment of appraisers, to ascertain and determine whether the company had been duly and legally organized; and, consequently, the persons whose

lands have been assessed would not be concluded by any such finding, if any such was made. It may be that the board of commissioners passed on the question of the organization of the company when it took steps toward an organization; but as was said by this court, in *Green* v. *Beeson, supra,* "it would be monstrous if action had under such circumstances should be held to conclude further inquiry," and especially that persons should be concluded whose lands had been assessed under an order made by the board of commissioners, at a time when the appellees were not parties. They were not petitioners or stockholders at that time. Their lands were assessed afterward. They had no standing in court. The proceeding was *ex parte* as to them.

The doctrine of the conclusiveness of the finding of a fact cannot thus be carried back and given a retroactive effect. It must relate to a fact found at the time when the order was made, the validity of which is called in question, and the fact found must have been essential to confer jurisdiction upon the board to make the order at the time when the fact was found to exist. In other words, the finding of the fact must be necessary, at the time it is so found, to evoke the exercise of jurisdiction; and if it is not so found, it cannot estop those who are affected by such order from denying the existence of such fact. The company, in the case under consideration, must have been organized under the act of May 12th, 1852, and we have seen that the first section of said act imperatively requires that the corporators "shall unite in articles of association, setting forth the name which they assume;" and it is averred in the complaint that the corporators did not assume a náme and set it forth in the articles of association. Without a compliance with this requirement of the section, there can be no valid corporation. It was held by this court, in the case of *The New Eel River Draining Association* v. *Durbin,* 30 Ind. 173, that "procuring an assessment to be made was a corporate act, and could not be legally done until after the articles of association were recorded, and the association thereby clothed

with corporate powers." It was held by this court, in *Green v. Beeson, supra,* that there was no valid corporation, because the road was not five miles long, and that, consequently, the assessment was void. So, in the case in judgment, the making of an assessment was a corporate act, and could not be legally done until the corporators had united in articles of association, setting forth the name which they assumed and the association thereby clothed with corporate powers.

We are very clearly of the opinion that the court committed no error in overruling the demurrer to the complaint.

We are asked by counsel for appellants to review the ruling of the court below in sustaining demurrers to certain answers, which it is claimed estop the plaintiffs from insisting that there was no legal corporation. In our opinion, there can be no estoppel where there is no legal and valid corporation.

The judgment of the court was fully justified by the evidence. We see no error in the record of which the appellants can complain.

The judgment is affirmed, with costs.

*J. C. McIntosh* and *B. F. Claypool,* for appellants.

*M. E. Forkner* and *M. L. Bundy,* for appellees.