The Board of Commissioners of Clay Co. *et al. v.* Markle *et al.*

THE BOARD OF COMMISSIONERS OF CLAY COUNTY ET AL. *v.*
MARKLE ET AL.

INJUNCTION.—*Motion to Dissolve Temporary Injunction.*—*Harmless Error.*—
The overruling of a motion to dissolve a temporary injunction, where no
appeal is taken from the order overruling such motion, even if error, becomes
harmless and presents no question for determination, after the cause has been
tried and a perpetual injunction granted.

SAME.—*Complaint.*—*Verification.*—No verification of a complaint is required
to enable a court to grant a perpetual injunction on the final hearing of the
cause.

CONSTITUTIONAL LAW.—*Relocation of County-Seat.*—Section 1 of the amend-
atory act in reference to the relocation of county-seats (3 Ind. Stat. 171) is
constitutional.

SAME.—*Title of Statute.*—Where the title of a statute recited that it was to
amend section 1 of a certain act, and also section 1 of an act amendatory of
said former act, a reference in the body of said statute to "section 1 of the
above recited act" was held to mean section 1 of said amendatory act, and not
section 1 of said amended act, which, having been once amended, was no
longer in existence, and therefore was not subject to amendment.

INJUNCTION.—*Right of Tax-Payers to Enjoin.*—Any tax-payer of the county
may maintain an action to enjoin the county commissioners from doing illegal
acts, and transcending their lawful powers, when the effect would be to impose
upon such tax-payer an unlawful tax, or to increase his burden by taxation.

The Board of Commissioners of Clay Co. *et al. v.* Markle *et al.*

JURISDICTION.—*Superior and Inferior Courts.—Intendment.*—Nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged.

SAME.—*Decision of Inferior Court on Jurisdictional Fact.—Conclusive.*—— When the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision is conclusive.

STATUTE CONSTRUED.—*Relocation of County-Seat.—Petition for Relocation.* The act of February 24th, 1869, 3 Ind. Stat. 171, in reference to the relocation of county-seats, does not require that it shall be stated in the petition that the requisite number of voters have signed it; but it must contain the requisite number, and the deed must be executed, conveying a good title to two sites for a court-house and jail, and the two hundred and fifty dollars must be paid, before the order for relocation can be made or the new county buildings erected.

SAME.—*Board of Commissioners.—Jurisdiction.*—The board of commissioners cannot decide upon the petition, or the number of legal voters petitioning, until it is presented, or upon the title to the land until the conveyance has been executed and delivered or offered, or whether the petitioners have deposited the requisite sum of money, until it has been paid or offered to the board. When these things have been done, the board must ascertain and determine these questions, and the right to hear and determine these questions is jurisdiction.

SAME.—*Legal Presumptions.*—The board of commissioners having acquired jurisdiction to hear and determine the matter of the petition and all questions arising under it, the Supreme Court must presume in favor of the regularity of the proceedings, and that whatever was done in deciding questions arising in the case, and in acting upon them, was done regularly and upon due proof, unless the contrary appears in the record.

JURISDICTIONAL FACTS.—The facts which must be shown to exist before a matter can be within the jurisdiction of an inferior court, and which can be inquired into collaterally, are such that in the absence of them the court cannot rightfully hear and determine any question touching the matter in controversy.

SAME.—Whenever it is admitted, either in the pleadings or otherwise, or shown by proof, that such facts did exist, that the proper steps had been taken, such as the filing of an affidavit, petition, or other papers, authorizing the court to act, to make an investigation and decision, then the jurisdictional facts exist.

JURISDICTION.—*Inferior Court.—Presumption.*—When the jurisdiction of inferior courts is once established, then all presumptions and intendments in favor of their proceedings and decisions apply to them as well as to courts of general jurisdiction.

INJUNCTION.—The fact that no appeal lies from a decision affords no ground for an injunction to restrain action under the judgment, or for setting it aside.

SAME.—When the board of commissioners have made an order relocating the county-seat, under the statute, they cannot be enjoined from letting a contract for the construction of new county buildings, on the ground that the architect has

not made a plan and estimates for a jail, and that none are on file in the auditor's office, or that the plan for the court-house is imperfect, and that the estimated cost of the same is more than fifteen thousand dollars.

From the Clay Circuit Court.

*G. A. Knight, S. W. Curtis*, and *J. M. Compton,* for appellants. *W. W. Carter* and *S. D. Coffey*, for appellees.

Osborn, J.—This was an action brought by the appellees against the appellants, the object of which was to prevent the relocation of the county-seat of Clay county, and to enjoin the board of commissioners from letting a contract for the erection of a court-house and jail at the proposed new county-seat. The complaint was in two paragraphs. The plaintiffs annexed an affidavit to the complaint that the allegations therein were true as they verily believed.

A temporary injunction was granted, as prayed for. Afterward the appellants moved the court to dissolve the injunction. Amongst the reasons stated for the motion was one, that the complaint was not sufficiently verified, and that the affidavit attached to the complaint was insufficient and not positive in form. They also filed separate demurrers to each paragraph of the complaint, on the ground that neither paragraph contained facts sufficient to constitute a cause of action; and, second, that the court had no jurisdiction of the subject of the action. The plaintiffs then by leave of the court, and over the objections and exceptions of the defendants, filed a new affidavit, in which it was stated positively that the allegations in the complaint were true. The motion to dissolve the injunction, and the demurrers to the complaint, were then overruled to which rulings the appellants excepted.

An answer of two paragraphs was filed to the whole complaint. A demurrer to the second paragraph of the answer for want of sufficient facts to constitute a defence to the action was sustained, and an exception taken.

The first paragraph was a general denial. The cause was tried by the court, who found that each and every allegation

of the complaint was true, and that the plaintiffs were entitled to the relief asked for, and, over a motion for a new trial, rendered a judgment perpetually enjoining the defendants, and each of them, and the Board of Commissioners of Clay County and their successors, from taking any further steps looking toward the relocation of the county-seat as proposed by the board, and from letting or proceeding to let or make any contract for the building of a new court-house or jail upon the sites proposed, and for costs against the board of commissioners.

Seven errors are assigned. The first and third relate to the action of the court in allowing the appellees to file an additional affidavit in support of the complaint, and in overruling the motion to dissolve the temporary injunction.

The second is, that the court erred in overruling the demurrer to the complaint.

The fourth is, that it erred in sustaining the demurrer to the second paragraph of the answer; the fifth, that it erred in overruling the motion for a new trial; the sixth, that the complaint does not state facts sufficient to constitute a cause of action; the seventh, that the circuit court had no jurisdiction over the subject of the action.

If an appeal had been taken from the order overruling the the motion to dissolve the injunction, the ruling of the court in allowing the additional affidavit to be filed, and overruling the motion to dissolve the injunction, would have been before us for review. 2 G. & H. 277, sec. 576. But where an appeal is not taken until after final trial and judgment for the plaintiff, and a perpetual injunction is granted, the error, if any, in refusing to dissolve a temporary injunction becomes harmless and presents no question for the determination of this court. It would be idle to reverse the order overruling a motion to dissolve a temporary injunction, after a trial of the action and decree for a perpetual injunction in the case.

No verification of the complaint was required to enable the court to grant a perpetual injunction on final hearing of the cause. *The Sand Creek Turnpike Co.* v. *Robbins*, 41 Ind. 79.

The fifth error raises no question. The causes for a new trial, as stated in the motion, all relate to the action of the court in overruling the motion to dissolve the temporary injunction and in overruling demurrers to the complaint and sustaining a demurrer to the second paragraph of the answer. The sixth and seventh present no question not involved in the second.

The action was brought by nine persons against the Board of Commissioners of Clay County and the three members composing the board.' In the first paragragh, it is alleged that the plaintiffs are *bona fide* residents, citizens, voters, and tax-payers of the county; that John G. Ackelmire and others presented a pretended petition to the board of commissioners, asking the relocation of the county-seat of the county to a place and site therein set forth; the presentation and depositing of a deed with the board, which purported to convey to the county, with covenants of warranty, two parcels of land, one as a site for the court-house, the other for a county jail, corresponding with the description of the two sites in the petition. It is also averred that the grantors had no title to the land described in the deeds, and the county has none; that notwithstanding the defective title to the land, the commissioners, at the regular September session of the board, pretended to entertain and hear the petition, and receive as valid the pretended conveyance, without right and without jurisdiction, and made an order of record, appointing an architect to make out plans, specifications, and estimates for a court-house and jail; and that the board made other orders, looking toward the removal of the county-seat from its present location to the site specified in the petition, a distance of fourteen miles. Copies of the petition and all the orders and proceedings of the board were filed and made parts of the complaint. It is then averred that the board failed and refused to require an abstract of title to the land conveyed, and failed and refused to examine and investigate the title to the land or hear proofs showing that the title was defective.

In the second paragraph, the same averments are made as
to the presentation of the petition and the deed.   It is also
alleged that the petitioners gave to the board two hundred
and fifty dollars in money to pay an architect; that the
board made an order relocating the county-seat, as prayed for
in the petition, appointed an architect to make plans for the
court-house, and passed an order, and took other steps for
finally relocating the county buildings according to the
prayer of the petitioners, and the erection of the court-house
and jail, and the removal of the public records and archives
of the county to such new county-seat.   Copies of the peti-
tion and all the orders, notices, and proceedings of the board
are filed with and made parts of the paragraph.   It is fur-
ther averred that the board failed and refused to investigate
the title to the real estate conveyed for the sites for a court-
house and jail and failed and refused to count the number of
petitioners for the relocation, and that the number thereof, at
the time of making the several orders of the board, was by
the board wholly unknown; that the county commissioners
had no jurisdiction to pass any of the orders, because there
was not, and the board did not find that fifty-five per cent. of
the legal voters of the county had signed the petition; that
the board did not find how many votes had been cast for can-
didates for Congress at the last preceding election, or the
number of legal voters that it was necessary should petition
for the relocation, or any other facts necessary to enable
them to pass any of the orders, or do any of the acts
touching the removal, and that the record of the pro-
ceedings of the board does not show any such finding.
The defect in the title to the real estate described in the
deeds is specifically pointed out.   It is alleged that the esti-
mate of the cost of the court-house, as made by the archi-
tect selected by the board, was at least twenty thousand dol-
lars, and that the petitioners for the change had not requested
the erection of buildings to cost more than fifteen thousand;
and that the plan and specifications adopted for the court-

house are so imperfect as not to be understood. In both paragraphs, it is alleged that the county commissioners will make the relocation and cause the construction of the court-house and jail, and the removal of the public records, etc., greatly to the damage of the plaintiffs, if they are not restrained by injunction. Prayer for an injunction in the usual form.

We do not consider it necessary to set out the averments in the second paragraph of the answer, because in our opinion all the facts alleged in it were admissible in evidence under the general denial. The only questions before us are those arising under the second assignment of error, in overruling the demurrer to the complaint.

It is insisted by the appellees that the first section of the act of February 24th, 1869, 3 Ind. Stat. 171, is unconstitutional; that all the proceedings for the relocation of the county-seat were predicated upon, and taken under, that section, and that consequently they are all void.

The original act authorizing the relocation of county-seats was approved March 2d, 1855. 1 G. & H. 194. The first and second sections of that act were amended by an act approved December 18th, 1865. Acts of Special Session 1865, p. 194. The second section of the act may be found in 3 Ind. Stat. 170. On the 24th of February, 1869, an act was approved, entitled "an act to amend sections 1 and 3" of the act of March 2d, 1855, and "section 1" of the act of December 18th, 1865. By the original section 1, as well as by the amendment to it by the act of 1865, two-thirds of the legal voters of the county were required to petition for the relocation of the county-seat before the board of county commissioners could make the removal. By section 1 of the act of 1869, only fifty-five per cent. of the legal voters were required.

The objection to the last named act is, that the title is to amend a section which had been already amended, and no longer in existence, as well as one in force, whilst in the body of the act, the language is in the singular number, "that

section 1 of the above entitled act be and the same is hereby amended," etc., and that the words "above entitled act" refer to the act of 1855 and none other.

Section 1 of the act of 1855 was amended by section 1 of the act of 1865, and was no longer the subject of an amendment, and the apparent attempt to include it in the act of 1869, by mentioning it in the title, was unavailing. *Draper* v. *Falley*, 33 Ind. 465. The title does properly mention the title and section 1 of the act of 1865. We think it more reasonable to hold that the General Assembly intended to amend the section of the law in force, rather than one for which it had been substituted. There being no such section in existence, the mention of it in the title might properly be disregarded in the body of the act. Our conclusion is, that the reference in the body of the act is to section 1 in the act of 1865, and that section 1 of the act of 1869 is constitutional and in force.

The appellants say that the demurrers to the complaint ought to have been sustained, because the contemplated injury would be to the appellees, in common with other taxpayers, citizens, and voters of the county, and that courts of equity will not enjoin the commission of an injury at the suit of one of the parties, under such circumstances, and only when the threatened injury will be special to the party asking the injunction. *Doolittle* v. *Supervisors, etc.*, 18 N. Y. 155, sustains the positions of the appellants. Other authorities hold the same doctrine. The rulings on the questions are not uniform. In some of the states, injunctions are granted in actions by an individual to restrain municipal officers from doing illegal acts, and from transcending their lawful powers, when the effect would be to impose upon him an unlawful tax or to increase his burden by taxation.

Judge DILLON, in his work on municipal corporations, considers the question quite fully, and says if the ordinary principle, which obtains as to public nuisances, is applied, it must be admitted, when the duty about to be violated by the corporation or its officers is public in its nature, and affects

all the inhabitants alike, that one not suffering any special injury cannot in his own name, or by uniting with others, maintain a bill to enjoin. The reason urged against it is, that if one can maintain such an action, an indefinite number may do the same. He says: "To allow the taxable inhabitant to maintain a bill for an injunction, to prevent illegal expenditures or appropriations of money, has the advantage of directness and simplicity, and, notwithstanding its departure, or apparent departure, from technical principles, has had the quite general, but not uniform, approval of the courts in this country; and practically, this course has not had the effect to engender a multiplicity of similar suits by separate parties, but a few persons usually unite in one suit, which, when, judicially settled, in effect settles the question in controversy." Sec. 736. And again he says: "Much more clearly may this be done when the right of the public officer of the State to interfere is not admitted, or does not exist." Sec. 736*a.* The action is regarded in the nature of a public proceeding to test the validity of the acts sought to be impeached. In New York, and perhaps other states, the attorney general is authorized to institute and carry on actions for such purpose.

It has been settled in this State that the remedy may be had by any tax-payer in his own name. *The City of Lafayette* v. *Cox*, 5 Ind. 38; *Oliver* v. *Keightley*, 24 Ind. 514. In *Harney* v. *The Indianapolis, etc., R. R. Co.*, 32 Ind. 244, the question was made, that the plaintiff as a tax-payer had no such interest in the funds of the county as would enable him to maintain a suit to prevent an unlawful appropriation thereof. This court held that the action could be maintained, and said that it was a common remedy in this State, and had been sanctioned elsewhere. That was an action to restrain the county from making an unlawful subscription and donation to a railroad company. In *English* v. *Smock*, 34 Ind. 115, this court held that the injunction ought to have been granted, restraining the board of county commissioners from negotiating the county bonds, at the suit of a part of

the tax-payers. In *Noble* v. *The City of Vincennes,* 42 Ind. 125, it was held that the city council might be restrained, under certain circumstances, from passing an ordinance to aid in the construction of a railroad. In this, like all the other cases, the action was instituted, and the extraordinary remedy sought, by one or more tax-payers, in his or their own names. In some of them, the doctrine now contended for was not mentioned. See *The City of New London* v. *Brainard,* 22 Conn. 552; *Scofield* v. *Eighth School District,* 27 Conn. 499. The same has been held in Iowa; *Rice* v. *Smith,* 9 Iowa, 570, which was to enjoin the erection of a court-house at a place which was not the county-seat of the county. In Illinois; *Colton* v. *Hanchett,* 13 Ill. 615. In Maryland; *The Mayor, etc., of Baltimore* v. *Gill,* 31 Md. 375. In New Hampshire; *Merrill* v. *Plainfield,* 45 N. H. 126. In many of the cases which we have examined, the question was made and passed upon, and in others the right to maintain the action by the individual was recognized without any question. In *The Mayor, etc., of Baltimore* v. *Gill, supra,* the point was made, and the right maintained by the court and many authorities reviewed and criticised. The distinction between an action to prevent a nuisance, unless the party may suffer some special damage, and one to prevent an act which will increase his burdens by illegal taxation, is pointed out. In the former, he has no other than an interest in common with others, whilst in the latter he has a special interest in the matter, distinct from that of the general public.

It is also claimed by the appellants that the averments in the complaint show that all the questions sought to be raised had been settled by the board of county commissioners, as appeared by the record of the proceedings filed with the complaint. They admit that the board was an inferior tribunal, but they say: " When the jurisdiction of an inferior court of special and limited statutory jurisdiction depends upon a fact which such court is required to ascertain, and settle by its decision, such decision is conclusive, except in a direct proceeding to reverse or set aside the judgment."

The appellees do not deny the general proposition of law laid down by the appellants. They say, however, that all jurisdictional facts must appear on the face of the record, and that the record must show the finding of the court upon all such facts, or its acts will be *coram non judice*, and they insist that the record fails to show a finding of any of the jurisdictional facts in this case.

As the decision of the case depends mainly upon this question, we have given it careful consideration, and find a complete reconciliation of the many rulings affecting it impossible. Whilst there are certain principles, recognized by all courts as fundamental, we find so many apparent exceptions and inconsistent rulings in the cases decided, that it is somewhat difficult to say what fixed and certain rules they establish as guides which can be followed in each case. The proposition that "the rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged" (*Peacock* v. *Bell*, 1 Saund. 73), is recognized by all the authorities as correct. So the rule that "when the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision is conclusive," is just as well established. *The Evansville, etc., R. R. Co.* v. *The City of Evansville,* 15 Ind. 395. These two propositions are sustained by numerous decisions. Indeed, there does not seem to be any controversy about them. The difficulty is to determine when jurisdiction attaches and just what the record must show to establish and make it conclusive. It is here that we meet the apparent conflicts in the rulings of courts. An examination of the decisions will be found interesting and useful to any one who has never carefully looked through them. But to review them would require a treatise, and their citation even would be out place and unnecessarily extend this opinion. A reference to many can be found in vol. 2 of

The Board of Commissioners of Clay Co. *et al. v.* Markle *et al.*

Philipps' Evidence (Cowen & Hill's and Edward's Notes), under the title, " The admissibility and effect of judgments of inferior courts;" and 1 Smith's Leading Cases, *Crepps* v. *Durden.* We shall only notice a few of such as we think directly applicable to the case under consideration.

Section 1 of the act of February 24th, 1869, 3 Ind. Stat. 171, provides, "that whenever fifty-five per cent. of the legal voters of any county in this State shall, by written petition, request the board of commissioners of their county to relocate the county-seat of such county, designating in such petition the site where such relocation is desired, and shall procure the conveyance to such board by deed, conveying good title of two lots of ground, one containing not less than two acres as a site for the court-house, and the other containing not less than one-fourth of an acre as a site for the county jail, to be held by such board for that purpose, and shall deposit with such board the sum of one hundred dollars to pay an architect, and one hundred and fifty dollars to pay commissioners to assess damages ; then such board shall proceed to have new county buildings erected thereon, and the county-seat removed thereto, in the manner and upon the conditions set forth in the following section."

Sec. 2, 3 Ind. Stat. 170, provides that when such petition is presented, and the affidavit of one or more persons filed, stating that the signatures to such petition are genuine, and that the petitioners are legal voters of such county, which affidavit shall be *prima facie* evidence that the facts so stated are true, and said money deposited, then said board shall at once employ a competent architect to prepare plans, specifications, and estimates suitable for new county buildings, the buildings to be of brick or stone, and the new county offices to be fire-proof, or as nearly so as practicable, the cost of the whole not to exceed fifteen thousand dollars, unless requested by the petitioners, and such plans, specifications, and estimates shall be presented to the board at its next session: Provided, that the number of votes at the congressional election next preceding the presentation of

such petition to the board of commissioners, with ten per centum added thereto, shall be considered the whole number of votes of such county. Authority is given to any person to appear and defend against the application and controvert any of the facts which the applicants are bound to prove.

In this case, the record of the board of county commissioners shows that a petition addressed to the board was filed before them, in which the petitioners represented that they were legal voters of Clay county, and respectfully asked for the relocation of the county-seat of that county at the town of Brazil, and that the court-house be erected upon a site described, containing two acres, and the county jail upon a site described, containing a quarter of an acre, for which purpose they tendered a warranty deed, purporting to convey a good title. They also tendered two hundred and fifty dollars to pay an architect and the commissioners, " as indicated in section 1 of the act of February 24th, 1869." The petitioners asked that the board take the necessary steps to accomplish the object of the petition. The number of the petitioners is not stated, but the copy in the record shows the names of two persons as signers, followed by the words, " and others."

Three citizens and voters of the county appeared and defended against the petition. The defendants filed an answer, and the petitioners filed a reply. A trial was had before the board. After witnesses had been examined on both sides, the answer was withdrawn, and, by agreement, the cause was submitted for final determination upon the motion made by the defendants to dismiss the application, " for the reason that the title deed filed in this case, for the purpose of conveying title to the county," for a court-house and jail did not convey a good title, and that to act on it would involve the county in endless litigation and expense. The board then made the following order:

" Which motion, after argument of counsel, the court overrules; and no further defence being made by defendants, the court grants the order for the relocation, as prayed for

in said petition and postpones further action herein until Monday, September 11th, at 8 o'clock A. M., to which time this cause stands continued."

The board afterward made an order appointing an architect, and directed the auditor to notify the governor of the filing of the petition.

The petitioners filed the plans, etc., of the architect appointed by the board; also, a note to secure the payment of the value of the real estate belonging to the county at the old county-seat; which were accepted by the board. The board also ordered the auditor to advertise for bids for the erection of the court-house and jail at the new sites.

Several motions and objections were made, and bills of exception filed before the board, which it is not necessary to set out or particularly mention. But no other entry or record of a finding or order was made than the one on the motion to dismiss the petition, and which is copied above.

The complaint admits that a petition was filed such as the statutes requires, except as to the number of petitioners ; that a deed for the sites for the court-house and jail was executed and given to the county board, which was sufficient to vest the title to the land in the county, if the title had been in the grantors, and that plans and specifications for the court-house were prepared and accepted by the board, and that the board, after hearing evidence on the question, passed an order for the removal of the county-seat. The record of the board produced by the appellees fully establishes these matters. What the appellees deny is, that the petition contained the names of fifty-five per cent. of the legal voters of the county, and that the deeds did, in fact, vest a good title to the land in the county. They also deny that the board made a proper finding.

The statute does not require that it shall be stated in the petition that the requisite number have signed it. It must contain the requisite number. The deed must be executed, conveying good title to the two sites for a court-house and jail, and the two hundred and fifty dollars must be paid before

the order for relocation can be made, or the new county buildings erected. The board cannot decide upon the petition or the number of legal voters petitioning until it is presented, or upon the title to the land described in the deed until the conveyance to the board has been executed and delivered or offered, or whether the petitioners have deposited the sum of money required, until it has been paid or offered to the board. When, however, these things have been done, the board must ascertain and determine those questions. If the petition contains the names of fifty-five per cent. of the legal voters of the county, and if the deed offered conveys a good title to the sites designated in the petition for the court-house and jail, and the requisite sums of money have been deposited with the board, then the board must proceed to have the new county buildings erected and the county-seat removed, and not before. The right to hear and determine these questions is jurisdiction. The power to hear and determine a cause, is jurisdiction. *Grignon's Lessee* v. *Astor,* 2 How. 338. Any movement of a court is necessarily jurisdiction. *Dequindre* v. *Williams,* 31 Ind. 444. "If the law confers the power to render a judgment or decree, then the court has jurisdiction. What shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it." *The State of Rhode Island* v. *The State of Massachusetts,* 12 Pet. 657.

The power to hear and determine the question gave the power to determine any or all of them, wrong as well as right. "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court." *Elliott* v. *Peirsol,* 1 Pet. 340; *Voorhees* v. *The Bank of the U. S.,* 10 Pet. 449. "Courts are established for the purpose of administering justice, and it is their duty, so far as they can discover the truth, to decide right. But the power to decide at all necessarily carries with it the power to decide wrong as well as

right. In the present imperfect state of human knowledge, a power to hear and determine necessarily carries with it a power which makes the determination obligatory, without any reference to the question whether it was right or wrong. If this were not so, the judgment or determination of any court would be of no particular value. It might be attacked or avoided at pleasure, upon the ground that the court or judge had committed an error." *Snelson* v. *The State*, 16 Ind. 29.

The facts which it is said must be shown to exist before the matter can be within the jurisdiction of an inferior court, and which can be inquired into collaterally, are such as, in the absence of which, the court can not rightfully hear and determine any question touching the matter in controversy. Hence a recital in the record of such facts may be shown to be false, and some courts hold that they are not even *prima facie* evidence of the truth, but that they must be proved by evidence *aliunde*. But, whenever it is admitted, either in the pleadings or otherwise, or shown by proof, that such facts did exist, that the proper steps had been taken, such as the filing of an affidavit, petition, or other papers, authorizing the court to act, to make an investigation and decision, then the jurisdictional facts exist. The whole question begins and ends here. "To investigate and decide" is but another phrase, meaning the same thing as to "hear and determine." This was recognized in *The State, ex rel. Waggoner*, v. *Needham*, 32 Ind. 325, where the county commissioners acquired jurisdiction by the filing of the petition. Whether it contained the requisite number of petitioners was a question for the board to decide, and their decision was held to be final and conclusive when attacked collaterally. In *Hord* v. *Elliott*, 33 Ind. 220, the same principle was recognized. It is said, on page 222: "When the jurisdictional facts do so appear, the record is conclusive against collateral attacks."

In *Weston* v. *Lumley*, 33 Ind. 486, this court held that although the petition to the county commissioners to enter of record a road was so defective that the court would not hes-

itate to hold the proceedings under it irregular, still it was also held that it was sufficient to confer jurisdiction upon the board. *Cooper* v. *Sunderland,* 3 Iowa, 114; *Little* v. *Sinnett,* 7 Iowa, 324; *Sheldon* v. *Wright,* 1 Seld. 497; *Jackson* v. *Robinson,* 4 Wend. 436; *Jackson* v. *Crawfords,* 12 Wend. 533. Without unnecessarily multiplying authorities, we think the above rule is quite uniform in this State and in some of the others. And whilst there are cases in other states which at first seem to hold otherwise, we think that a thorough examination, comparison, and analysis of all of the decisions will show it to be the true rule. See part 2, vol. 1, Smith's Leading Cases, 1096–7 (marginal, 817–18); *Betts* v. *Bagley,* 12 Pick. 572; *Wells* v. *Stevens,* 2 Gray, 115; *Harrington* v. *The People,* 6 Barb. 607; *Ford* v. *Walsworth,* 19 Wend. 334; *Hyatt* v. *Bates,* 35 Barb. 308. In *Harrington* v. *The People, supra,* the record was held defective because it did not show that a written application had been made to the commissioners to lay out the road, without which they had no authority to act. In *Ely* v. *Cooke,* 28 N. Y. 365, the proceedings were held invalid because the affidavit was not sworn to before the recorder and signed by the recorder before the order was granted.

The same rule prevails as to jurisdiction over the subject-matter and, when necessary, of the person.

When the jurisdiction of inferior courts is once established, then all presumptions and intendments in favor of their proceedings and decisions apply to them as well as to courts of general jurisdiction. The strictness applies only to the question of jurisdiction. *State of Ohio* v. *Hinchman,* 27 Penn. St. 479; *Fowler* v. *Jenkins,* 28 Penn. St. 176. In the last case it is said: "The difference is that jurisdiction in one case is presumed, and in the other it must be proved." *Cooper* v. *Sunderland,* 3 Iowa, 114, 125; *Dempster* v. *Purnell,* 3 Manning & Granger, 375, 378; *Cason* v. *Cason,* 31 Miss. 578–92; *Crossley* v. *O'Brien,* 24 Ind. 325. The court says, on page 331: "But, as to proceedings in the cause after jurisdiction to proceed has been obtained, the

same presumption·in support of their regularity will be
indulged, as in ordinary cases with courts of general· juris-
diction." *The Pendleton, etc., Turnpike Co.* v. *Barnard,* 40
Ind. 146.

The fact that there is no appeal from the decisions affords
no ground for an injunction to restrain action under the judg-
ment, or to set it aside. " It does not by any means follow,
that because an error * * * may not be corrected by a.
common law *certiorari,* it is therefore a proper case for equita-
ble interposition." *Hyatt* v. *Bates, supra.* · "The court having
power to make the decree, it can be impeached only by
fraud in the party who obtains it." *Cooper* v. *Sunderland,*
*supra,* 133; *United States* v. *Arredondo,* 6 Pet. 691, 729.
There is no allegation of fraud in this case.

The board of county commissioners having acquired juris-
diction to hear and determine the matter of the petition and
all questions arising under it, we must presume in favor of
the regularity of the proceedings after that, and that what-
ever was done by them in deciding questions arising in the
case, and in acting upon them, was done regularly and upon
due proof, and that no order or decision was made, except.
upon satisfactory proof and proper finding, unless the con-
trary appears in the record. The proceedings may be irregu-
lar and erroneous, and yet valid when attacked collaterally
as in this case. *Reeves* v. *Townsend,* 2·Zab. 396; *Schuylkill
Falls' Road,* 2 Binney, 250; *Brown* v. *Lanman,* 1 Conn. 467.
In that case, an objection was made that the court had failed
to enter a proper finding of record, and that the order of sale
was therefore void. The court, on page 469, says: "Though
the proceedings of the ·court, from the facts stated in the
bills, and found by the superior court, were erroneous, and
would be set aside on a proper appeal; yet till set aside, the
judgment is valid." In *The President, etc., of the Orphans'
Court* v. *Groff,* 14 S. & R. 181, it was held that a decree of
the orphans' court, unreversed and unappealed from, cannot
be questioned in a collateral suit, except in cases of fraud or

when the defect plainly appears on the face of the proceedings. And when a party relies upon fraud, it ought to be distinctly and positively alleged, and not inferred merely from circumstances. *Kennedy* v. *Wachsmuth,* 12 S. & R. 171 ; *The Pendleton, etc., Turnpike Co.* v. *Barnard,* 40 Ind. 146. In that case it was held that certain facts, which did not appear in the record of the board of commissioners, would be presumed. It is said, on p. 147–8 : " The board granted the prayer of the petitioners, and we think we ought to presume that the board satisfied itself of the existence of these two important facts before granting the request of the petitioners."

See, also, *The Evansville, etc., R. R. Co.* v. *The City of Evansville,* 15 Ind. 395, and authorities cited ; *Rhodes* v. *Piper,* 40 Ind. 369 ; *Hornaday* v. *The State,* 43 Ind. 306.

It is finally insisted that the board ought to be enjoined from letting the contract for the construction of the new county buildings, because the architect did not make any plan, specifications, or estimates for a jail, and that none are on file in the auditor's office ; that the plan for the courthouse is so imperfect that it can not be understood, and that the estimated cost of it, as made by the architect, is more than fifteen thousand dollars.

In our opinion, these objections are not sufficient grounds for an injunction. The commissioners were not required to adopt the plans submitted by the architect, nor were they limited to his plans. The act only requires them, on the filing of the petition properly verified, to employ a competent architect to prepare plans, specifications, and estimates suitable for new county buildings. Then follows the provision : " The buildings to be of brick or stone, and the county offices to be fire-proof, or as nearly so as practicable, the cost of the whole not to exceed fifteen thousand dollars, unless requested by the petitioners, and such plans, specifications, and estimates shall be presented to the said board at its next session." There is nothing in the act making a failure of the architect to make plans for the courthouse or jail, or the rejection of his plans, or the omission

to file or keep them in the auditor's office, fatal to the power of the board to "proceed to have new buildings erected, * * and the county-seat removed." Such plans when submitted were subject to the approval, rejection, or modification by the board. It would be competent for the board to accept a bid, and contract for the erection of buildings upon plans entirely different from those previously adopted or advertised for. The kind of buildings to be erected and the plans and specifications to be finally adopted are matters within the discretion of the board, and over which, in the absence of fraud, no court can exercise any control, so long as its acts are within the scope of its authority.

The question of the right of the county to contract for the erection of county buildings at a cost exceeding fifteen thousand dollars does not arise in this case. We cannot tell in advance that the bids will equal the estimates made by the architect, or that the board will accept of any such bids if made. We will not presume that the board will make a contract in violation of law. If the law limits the cost of the buildings as claimed by the appellees, any contract for their erection at a sum greater than fifteen thousand dollars will be without authority, and the limitation being by public law, the contractors will be affected by notice.

It will be time to apply for an injunction when it is shown that without it there is ground to fear that the board will do an unlawful act or violate its official duty, to the prejudice of the party applying for such injunction. Until that is done, the application for an injunction is premature.

The judgment of the said Clay Circuit Court is reversed, with costs; the cause is remanded, with instructions to said court to sustain the demurrers to both paragraphs of the complaint, and for further proceedings in accordance with this opinion.