MOORE ET AL. *v.* THE STATE, EX REL. JOHNSON, PROSECUT-
ING ATTORNEY

No. 8709.

TURNPIKE.—*Sale of, Under Mortgage.—Rights of Purchasers.—Forfeiture.—*
The provisions of the act of March 5th, 1859, 1 R. S. 1876, p. 668, "au-
thorizing the purchasers of railroads, * turnpike roads," etc., "under
mortgage sales," etc., "to organize as incorporated companies," etc., are
permissive merely, and not prohibitory, and contain nothing forbidding
such purchasers from organizing as a corporation of the like kind, after
the time specified in such act, under the laws of this State; nor does such
statute intend that such purchasers shall forfeit the property so purchased
by a failure to organize as such a corporation within the time specified.

SAME.—*Special Legislation.—*Such act, though general in its terms, was ev-
idently intended to enable purchasers to enjoy the franchises of charters
more liberal than could be enjoyed by incorporation under the general
law then existing; but it neither repealed nor impaired the provisions of
the act of February 28th, 1855, 1 R. S. 1876, p 663, amending the "act
authorizing the construction of plank, macadamized and gravel roads,"
approved May 12th, 1852, 1 R. S. 1876, p. 654.

SAME.—*Information.—Quo Warranto Against Purchasers Acting as Direc-
tors of Turnpike Company.—*An information, in the nature of a *quo
warranto,* in the name of the State, on the relation of a prosecuting at-
torney, alleged the sale of a certain gravel road, to the defendants, at a
sheriff's sale thereof under a decree of foreclosure of the mortgage thereon;
that the defendants, claiming to be directors of a new corporation acting
under the same name as the original, were exercising the rights and pow-
ers of directors; that they claimed to have organized such new corpora-
tion under the provisions of said act of March 5th, 1859; but that they had
not attempted to so organize until more than three years after they had
made such purchase, which was after said act had taken effect; and that
such new corporation had never been organized under any law of this
State.

*Held,* on assignment of error in the Supreme Court, for the first time ques-
tioning the sufficiency of the complaint, that it was sufficient.

SAME.—*Answer.—Extent of Mortgage, Decree of Foreclosure and Sheriff's
Sale.—*An answer to such information alleged the existence of the origi-
nal corporation, and that the defendants were directors thereof; that the
mortgage under which sale was decreed had been executed as security for
money borrowed by the directors to complete the road; that neither the
mortgage, the judgment of foreclosure, nor the sheriff's sale disposed of
or conveyed the franchises of the original corporation, but that such

franchises remained in the original corporation, which continued to elect directors and operate said road, which continued under the control of such directors, and was placed in the hands of a receiver appointed by the court decreeing such foreclosure; that the purchasers had agreed to, and did, leave such control in such original corporation, under an agree-ment that the latter might redeem from such sale; that the defendants never acquired any other title in said road than that acquired under said purchase; and that the corporation complained of was organized by the defendants merely as a precautionary measure, and without intending to supersede the original. There was nothing in the new articles of incorporation which were made part of the answer, showing that the new corporation was organized under said act of March 5th, 1859.

*Held,* on demurrer, that the answer was sufficient.

SAME.—*Curative Act.*—The act of March 3d, 1877, Acts 1877, Reg. Sess., p. 89, cures the defects complained of in the information in this case, and such corporation was thereby legalized.

From the Wayne Circuit Court.

*W. A. Bickle, J. Yaryan* and *J. L. Yaryan,* for appellants.

*H. U. Johnson* and *I. B. Morris,* for appellee.

HOWK, J.—This was an information, in the nature of a *quo warranto,* in the name of the State of Indiana, on the relation of Henry U. Johnson, Esq., Prosecuting Attorney of the 17th Judicial Circuit, as plaintiff, against Jacob S. Moore, John Moore, Alfred Moore, John M. Shaffer and William Paddock, as defendants. The information charged, in substance, that the appellants, the defendants below, were acting within this State as a corporation, under the assumed corporate name of the "Wayne and Union Straight Line Turnpike Company," without having been legally incorporated; and judgment of ouster was demanded against the appellants, and for their exclusion from the exercise of corporate rights and franchises, as such corporation, and for other proper relief in the premises. The appellants jointly answered in four paragraphs, of which the first was a general denial, and each of the other three paragraphs stated special matters, by way of defence. The

appellee's relator demurred separately to the second, third and fourth paragraphs of answer, for the alleged insufficiency of the facts therein to constitute defences to the information, which demurrers were severally sustained by the court, and to these decisions the appellants excepted. They then withdrew the first paragraph of their answer, and, declining to amend or plead further, judgment of ouster and exclusion was rendered against them, on the demurrers, as demanded in the information. Their motion to modify and reform the judgment having been overruled, and their exception saved to this ruling, they have appealed to this court, and have here assigned, in substance, the following errors:

1. The circuit court erred in sustaining the demurrer to the second paragraph of their answer;

2. The court erred in sustaining the demurrer to the third paragraph of their answer;

3. The court erred in sustaining the demurrer to the fourth paragraph of their answer;

4. The relator's information did not state facts sufficient to constitute a cause of action; and,

5. The court erred in rendering a judgment against the corporation named in the information, which was not a party to the action, and in refusing to reform and correct its finding and judgment against said corporation.

It is necessary, we think, to a proper understanding of the case, and of the questions for decision therein, that we should first give a summary of the facts stated in the information. It was alleged therein, in substance, that the appellants were, and had been for one year last past, at Wayne county, Indiana, under the assumed corporate name of the "Wayne and Union Straight Line Turnpike Company," assuming, claiming and pretending to be a legally incorporated turnpike corporation, under the laws of this State, to wit, under and pursuant to the provisions

of an act, approved March 5th, 1859, entitled " An act authorizing the purchasers of railroads, plank roads, turnpike roads and macadamized roads, or parts thereof, under mortgage sale or sales made according to the terms of deeds of trust, to organize as incorporated companies, and prescribing their powers and duties," 1 R. S. 1876, p. 668 ; that then and continuously during the said past year, at said county, the appellants, under said assumed corporate name, and claiming a legal incorporation and the right to act as a corporation solely under the above entitled act, had acted as a turnpike corporation, in this, that they had then and there taken possession of a certain turnpike and gravel road then and there being, and had erected and taken possession of certain toll-gates thereon, and had posted toll-rates thereon, and, through their gatekeepers, had charged and collected toll for travel on said road, and had held pretended corporate meetings, and had elected directors and officers for said pretended corporation, and had arrogated and taken to themselves the said corporate name, and had passed by-laws for the government of said pretended corporation, and had exercised many other of the rights, franchises and immunities of a turnpike corporation ; that the gravel and turnpike road, so operated by the appellants under such pretended incorporation, commenced at a point a little south of the city of Richmond, in said county, where the Boston and Richmond turnpike left the west line of section 9, township 12, and range 1 west, and running thence south to the line between Wayne and Union counties, and thence south one mile on the section line to an east and west road, said gravel and turnpike road being six and one-half miles in length ; that the appellants were not then, and never had been, a legal turnpike corporation, under any law of this State, and that they had no right, title or privilege to be a turnpike corporation, and to enjoy or possess the rights. privileges,

franchises or immunities of such a corporation, under the laws of this State.

And the relator further alleged, that the sole manner of the attempted organization and incorporation of the appellants into said pretended turnpike corporation was as follows : That, at and long before the year 1872, there existed in Wayne and Union counties a gravel road corporation, known as the " Wayne and Union Straight Line Turnpike Company," duly and legally incorporated under the act of May 12th, 1852, entitled " An act authorizing the construction of plank, macadamized and gravel roads," which said corporation owned and operated, in its corporate capacity, the said gravel and turnpike road, thereinbefore described ; that said last named corporation possessed all the rights and franchises conferred by law on such corporations, was managed by its directors duly chosen, and had erected toll-gates, and was collecting toll for travel upon said road ; that at the April term, 1872, of the court of common pleas of Wayne county, to wit, on May 2d, 1872, a judgment for the foreclosure of a certain mortgage previously executed by the said last named company, to secure the payment of money previously borrowed for the completion of its road, was rendered against said company, in favor of one John Raper and Zachariah Osborn, in an action then and there pending, wherein the said Raper and Osborn were plaintiffs, and the said company and others were defendants ; that afterward, on June 14th, 1872, an order of sale duly certified was legally issued on said judgment, out of said court, to the sheriff of said Wayne county, for the sale of its said gravel road, by virtue of which said order of sale, the said sheriff, after due and legal notice, in due form of law, sold the said gravel road of said last named company, at sheriff's sale, to said Raper and Osborn, on the 13th day of July, 1872, for the sum of fifteen hundred dollars ; that, on the pur-

chase of said road, at said sale, the said Raper and Osborn received from the sheriff a certificate of said purchase, which certificate they held and owned until January 24th, 1873, at which date they sold, assigned and delivered the said certificate to said Jacob S. Moore, one of the appellants in this action, for the sum of twelve hundred dollars, or thereabouts; and that afterward, on July 30th 1873, the said sheriff executed and delivered to said Jacob S. Moore, the assignee and holder of said certificate of purchase, a sheriff's deed for said gravel road.

And the appellee's relator further alleged, that the said Raper and Osborn did not, nor did either of them ever, at any time before or after their said purchase of said gravel road at sheriff's sale, make any effort whatever to organize a distinct corporation under the original charter of the said Wayne and Union Straight Line Turnpike Company, and the amendments thereto, by creating a stock not exceeding the cost of the construction of said road, or the part thereof purchased, and appointing a board of directors equal in numbers with that prescribed in said original charter and its amendments; that, in fact, said Raper and Osborn did not, either jointly or separately, at any time before or after said purchase, make any endeavors to organize a gravel, macadamized or turnpike road corporation of any kind whatsoever, with a view to or in order that they might enjoy and perpetuate the corporate rights and franchises of said turnpike company, as provided in the above entitled act of March 5th, 1859, and the acts supplemental to and amendatory thereof; that the appellant Jacob S. Moore, at no time, either before or after the said sheriff's sale of said gravel road, made any effort, nor did he proceed, to organize a distinct corporation, under the original charter of said turnpike company and the amendments thereto, nor did he ever create or make any effort to create a stock not exceeding the cost of the construction

of said road, or the part thereof purchased, nor did he ever proceed, or make any effort, to appoint a board of directors equal in number with that prescribed in said original charter of said turnpike company and the amendments thereto, until the 1st day of May, 1875; that, in fact, the said Moore never took any steps whatever, looking to the preservation and enjoyment of the corporate rights, franchises and privileges of said turnpike company, required by the aforesaid act of March 5th, 1859, and the said amendatory and supplemental acts, until the said 1st day of May, 1875.

And the relator further alleged, that, on said last named day, nearly three years after the said purchase of said gravel road, at said sheriff's sale, by said Raper and Osborn, the said Jacob S. Moore for the first time attempted to preserve to himself the corporate rights and franchises of said turnpike company, and then, for the first time, proceeded with an attempted organization under the original charter and amendments of said turnpike company, by then attempting to appoint a board of directors equal in number with that prescribed in the original charter of said last mentioned company; that said board of directors, so sought to be appointed by said Moore, consisted of said Jacob S. Moore, Alfred Moore, John Moore, John M. Shaffer, appellants in this action, and Samuel L. Moore, since deceased; but said persons constituted all the stockholders of said attempted organization; that it assumed, and took as its name, the name of the old turnpike corporation, whose road was so sold at said sheriff's sale, to wit, the "Wayne and Union Straight Line Turnpike Company;" that the appellants and said Samuel L. Moore soon thereafter filed in the offices of the recorders of Wayne and Union counties a certain statement, by them prepared and designed as the statement required by the 2d section of the aforesaid act of March 5th, 1859, and

under which they were then claiming and pretending to incorporate as a turnpike company, by virtue of the said sheriff's sale of said road and the subsequent title of said Moore thereto, acquired in the manner heretofore stated, and that on the 22d day of May, 1875, the said Jacob S. Moore conveyed by deed the said turnpike road heretofore described to said attempted new organization, describing it in said deed as grantee, by its said assumed corporate name.

The appellee's relator further alleged, that afterward the appellant William Paddock, having been admitted by his co-appellants into the said pretended corporation, all of them assuming and claiming to be a legally incorporated turnpike company, under and by virtue of their pretended compliance with the aforesaid act of March 5th, 1859, and assuming to be a legal corporation under said act, at said county, under its said assumed corporate name, took possession of the above described gravel and turnpike road, as heretofore alleged, and performed the said pretended corporate acts and acts of user heretofore specified to have been done by them; that they were not, and never had been, a legal or rightful turnpike corporation, for the reason that their attempted incorporation as such was not made or completed within the time required by the above entitled act of March 5th, 1859, under which alone they attempted to incorporate and claim an incorporation, having never at any time taken any steps to incorporate themselves under any other statute of this State; that they were the only members and stockholders of said pretended corporation; that they had no lawful right or authority to exercise the rights, privileges or franchises of a turnpike corporation; and that their said failure to comply with the provisions of the aforesaid act of March 5th, 1859, was unknown to the appellee or its officers, or to the relator, until within nine months last past. Wherefore, etc.

The appellants did not demur in the circuit court to the relator's information; but they have here assigned as error the insufficiency of the facts stated in the information to constitute a cause of action. Their counsel have not, however, in their brief of this cause, discussed any question which can be said to be fairly presented by this supposed error; and therefore, under the settled practice of this court, this alleged error, even if well assigned, must be regarded as waived. We may properly say, however, that the facts stated in the information appear to us to bring the case squarely within the provisions of the act of March 5th, 1859, referred to therein. In section 1 of said act, it was provided, in substance: " That if any railroad, plank road, turnpike road or macadamized road company has heretofore executed, or shall hereafter execute any mortgage or deed of trust upon the whole or any portion of their road and its appurtenances, upon the foreclosure of said mortgage and sale under such foreclosure, or a sale under such deed of trust in accordance with the terms thereof, the purchaser or purchasers, at such sale of said road and its appurtenances, or of any part thereof, shall have the right, by such name as he or they may assume, to hold, own and possess the road, or part thereof so purchased, and to have and enjoy all the rights, privileges, franchises, and immunities of said company over said road, or the part thereof so purchased; and such purchaser or purchasers shall, from the time of such purchase, become and be a distinct corporation under the name so assumed, with all the rights, franchises, powers and privileges conferred by the existing charter of said company, or any amendments thereto, so far as the same may be applicable to the road, or the portion thereof so purchased, upon condition that said purchaser or purchasers, within three months from the time of such purchase, proceed to organize such

distinct corporation, under such original charter and amendments, by creating a stock, not exceeding the cost of the construction of said road, or the part thereof so purchased, and appointing a board of directors equal in number with that prescribed in said original charter and amendments, who shall be governed by said original charter and amendments until superseded by a regular election of directors according to the provisions of said charter and amendments."

Section 2 of said act provides : " Any association organized under the provisions of this act, shall, within thirty days from the date of such organization, file for record in the office of the recorder of each county into or through which said road, or part thereof so purchased extends, a statement of the road, or part thereof purchased, the date of such purchase, the name of the purchaser or purchasers, the corporate name assumed by said organization, the amount of the capital stock, the number of shares and the names of the holders thereof, and the names of the directors and officers of said company, which statement shall be evidence of the organization of said company."

The third and last section of said act " declared that an emergency exists for the immediate taking effect of this act, and therefore the same shall be in force from and after its passage."

Before passing to the consideration of the sufficiency of the appellants' answers, we make the following general observations on the provisions of the statute which constitute the basis of the relator's information in this case.

1. The statutory provisions are permissive, and not prohibitory, in their character. There is nothing in the statute, from the enacting clause to the declaration of an emergency, as we read its provisions, which forbids the purchaser or purchasers of any one of the roads men-

488    SUPREME COURT OF INDIANA.

Moore *et al. v.* The State, *ex rel.* Johnson, Prosecuting Attorney.

tioned, or of any part thereof, from organizing a corporation of the like kind, after the expiration of the time specified in said act, under the laws of the State, for the purpose of managing, controlling, completing or keeping in good condition such road or part of a road. Nor have we found in said statute a word, sentence or section which indicates to our minds a legislative purpose or intention, that the property of the purchaser or purchasers of any such road, or part of a road, should be confiscated and lost by him or them, if he or they should fail, "within three months from the time of such purchase," to organize a distinct corporation, or if such corporation should fail, for thirty days from the date of its organization, to file for record in the proper recorders' offices the statement required by the statute.

2. The statute under consideration is general in its terms; but yet it is manifest from its provisions, that it was enacted for the special purpose of saving to the purchaser or purchasers of some road, or part of a road, the benefits of a special charter and its amendments, which it was thought by him or them were more liberal in the rights, privileges and franchises conferred, than the general road law of the State applicable to such road or part of a road.

In the second paragraph of their answer, the appellants alleged, in substance, that in the year 1859 there was organized and regularly incorporated a gravel road or turnpike company, under the act of 1852, by the corporate name of the "Wayne and Union Straight Line Turnpike Company," operating and using a line of gravel or turnpike road, about six and one-half miles long, a part only of which was made, leaving several miles incomplete, beginning at a point on the Richmond and Boston turnpike, one and one-half miles south of the city of Richmond, Indiana, and running thence, in a south-westerly

direction, to the Union county line; that the said gravel road was so operated by said corporation, enjoying all the rights, privileges and immunities of such a corporation, until the — day of April, 1872; that said corporation was duly organized by the election of a board of directors, who had been kept in existence by regular elections of the stockholders thenceforward ever since, and said directors had continued to prosecute said work, and had built several sections of said turnpike, and the balance was in process of construction; that afterward, on the — day of ————, said corporation, for the purpose of raising money to prosecute said work, executed a mortgage to John Raper and Zachariah Osborn, to secure $————, which was recorded, and was made a part of said paragraph of answer; that during the April term, 1872, of the court of common pleas of said Wayne county, a judgment of foreclosure of said mortgage was rendered by said court against the said " Wayne and Union Straight Line Turnpike Company," and in favor of said Raper and Osborn, as would be seen by the records of said court and the papers in said cause, referred to and made part of said paragraph of answer; that afterward, on the — day of June, 1872, there was issued on said judgment an order of sale duly certified to the sheriff of Wayne county, for the sale of the road of said corporation, under said judgment; that, after due notice as required by law, the said sheriff sold said road at sheriff's sale; that neither the conditions of said mortgage, nor the judgment thereon, nor the sale thereunder transferred, disposed of or conveyed the franchises of said corporation upon the said purchasers, but that the same remained in said corporation, who thenceforward kept up said organization by successive elections of directors and operating said road; that the said Raper and Osborn were the purchasers thereof at the sum of $1,500; that, after the said judicial sale and purchase, the

said gravel road still remained in the possession and control of the directors of said corporation and was placed in the hands of a receiver, who was one of the directors, as would be seen from the records of said foreclosure and receivership in said common pleas court, and so remained for more than two years after said sale; that, at and before said sheriff's sale, it was agreed between said Raper and Osborn, the purchasers, and a part of the directors of said corporation, that the corporation or its directors might redeem the said road from such sale thereof, or they might have the benefit of said purchase in order to keep up said corporation and secure the maintenance of said road and its final completion as a public benefit, and the directors were left in the possession of said road; that thereafter, pursuant to said previous agreement, on the — day of January, 1873, the certificate of purchase issued to said Raper and Osborn was assigned, transferred and delivered by them to the appellant Jacob S. Moore, then the president of said corporation, for the sum of $1,200; that afterward, on the — day of July, 1873, upon presentation of said certificate of sale to the sheriff of Wayne county, there was executed and delivered by said sheriff to said Moore a sheriff's deed of said gravel road; that said Raper and Osborn ·never held any other title to the said rights and franchises, than that acquired under said foreclosure and the said agreements made pursuant thereto; that, after said purchase by said Jacob S. Moore, he and Alfred Moore, John .M. Shaffer and Samuel L. Moore formed a corporation in and by the articles of association filed with and made a part of said paragraph of answer, for the purpose of purchasing, owning and using the part of said road already built and the part in process of construction; the said parties, being the directors of the first corporation, and having organized the said corporation under the name of the " Wayne and Union Staight Line

Turnpike Company," for the purpose of purchasing said road, complete and incomplete, so as thereby to keep up said corporation and secure the completion of the said road as a great public benefit, and for the purpose of raising the means and continuing said work which had been left incomplete for the want of means, did purchase the said turnpike road of said Jacob S. Moore, who transferred all his interest therein to said corporation, and they then and there, on the — day of May, 1875, made the same an incorporated company, under the aforesaid corporate name, by filing their articles of incorporation in the recorder's office of said Wayne county, and duly organized by electing a board of directors as aforesaid, who were also the directors of the first named corporation, and had ever since maintained said gravel road and kept up said organization ; that, before any conveyance or transfer whatever of the said Raper and Osborn or any other person, the said Jacob S. Moore and others, still being directors of the first corporation, borrowed the said sum of $—— and paid off the debt of said Raper and Osborn, and took a transfer of the aforesaid sale, intending to keep the said corporation alive ; that thereafter, not being fully advised as to whether the first corporation continued to exist, they, the said Jacob S. Moore and others, proceeded to incorporate themselves in and by the said second articles of association, but that, in all things done by said parties, it was their purpose to keep up the said organization of the " Wayne and Union Straight Line Turnpike Company ; " and that neither the said road nor its franchises had ever passed from said corporation, only so far as might be affected by said sheriff's sale.

It is conceded by the appellants' counsel that the third and fourth paragraphs of the answer allege substantially the same facts as those set up in the second paragraph of answer. We need not, therefore, set out or summarize in

this opinion the allegations of either the third or fourth paragraphs of the answer.

We are of the opinion that the facts stated in the second paragraph of the answer were sufficient to constitute a complete bar to the relator's information. While it seems to us, that the provisions of the act of March 5th, 1859, above set out, are at least of doubtful application to the case made by the information, yet, if it be conceded that those provisions are strictly applicable to such case, and it is not necessary that we should, and we do not decide otherwise, we think that the averments of the second paragraph of answer constitute a complete defence to the case thus made. From the summary of this paragraph of answer which we have given, it will be readily seen that the appellants claimed therein, that, by regular election, they were the directors of the original " Wayne and Union Straight Line Turnpike Company," organized for the construction of the road in controversy, whose organization had been kept up and maintained, as well as directors of the new corporation, which had been organized by them as a precautionary measure, upon the sheriff's sale and conveyance of said road; but that the said road and the franchises of the original corporation had never passed from said corporation, only so far as such transfer might be effected by the sheriff's sale and conveyance of the road. Now, it was certainly competent for the appellants, as the directors of the original corporation, after the sheriff's sale of its road, to raise the money and purchase and take an assignment of the sheriff's certificate of sale. We do not think that the subsequent execution of the sheriff's deed of the road to one of the appellants, as the assignee of said certificate, and the failure of such grantee and his associates to organize a new corporation, under and in accordance with the provisions of the aforesaid act of March 5th, 1859, and within the times limited

therein, would work any forfeiture of the rights, privileges and franchises of the original corporation, or would justify the State in claiming, or authorizing the courts to grant, a judgment of ouster and exclusion against the appellants, as the directors of said corporation. It should be the policy of the State and of its officers of all grades, as it seems to us, to foster and encourage in all legitimate ways the organization of turnpike and gravel road corporations, and the construction and maintenance of their roads. The rights, privileges and franchises of such corporations, we think, should not be declared forfeited, and they should not be ousted and excluded therefrom, except for solid, weighty and cogent reasons, for the violation of a positive and prohibitory statute, and not of a statute whose provisions are permissive and apparently directory, and never upon merely technical grounds.

We have already said, that, while the act of March 5th, 1859, above quoted, was general in its terms, as it had to be under the constitution of 1851, yet its provisions indicated that it had probably been enacted for the special purpose of saving to the purchaser of some road, or part of a road, constructed under a special charter enacted by the Legislature prior to 1851, the benefits of such special charter. We do not think that the act of March 5th, 1859, either in terms or by implication, repealed or impaired the provisions of an act entitled " An act to amend the act entitled ' An act authorizing the construction of plank, macadamized, and gravel roads,' and to empower the same to make sale of a portion of their roads," approved February 28th, 1855. In the 1st section of this amendatory act, it is provided, " That it shall be lawful for any number of persons, not less than three, to form themselves into a company under the act authorizing the construction of plank, macadamized, and gravel roads, for the purpose as well of purchasing and using a part or

section of a road already built, or in process of building, as of constructing a new road." 1 R. S. 1876, p. 663.

There is nothing in the articles of association of the new corporation, as the same appear in the record of this cause, to indicate that the appellants intended therein and thereby to incorporate themselves under the provisions of the aforesaid act of March 5th, 1859, or of any other specified act. It will be observed, that, in the section above quoted of the act of February 28th, 1855, there is no restriction or limitation as to the time within which the purchasers of a road, or part of a road, should organize a corporation under the law, for the purposes of constructing, maintaining, operating and using such road, or part of a road. The appellants' counsel claim, and with much force and show of reason, that there is nothing in this act to prohibit or prevent the purchaser of a road or part of a road, at a sheriff's sale thereof, from organizing at any time a new corporation, clothed with all the rights, privileges and franchises conferred by law, to take possession of and use the property purchased for all or any of the purposes specified in said act. Counsel further claim, that as the articles of association of the new corporation, in this case, do not indicate that the appellants sought and intended to incorporate themselves under the harsh and restrictive provisions of the aforesaid act of March 5th, 1859, the courts might well assume, and ought to assume, in the interest and for the protection of the rights of private property, they intended to and did organize and form such new corporation, not under those provisions of that act, but under the wiser and more liberal provisions of the above entitled act of February 28th, 1855, for the purposes therein specified. We fully concur with the appellants' counsel in their claims and views in this regard, for we can not believe that it is the policy of the law, or was the intent of the law-makers, to forfeit the property rights and

franchises of a road corporation or its corporators, and to oust and exclude it or them therefrom, upon the technical grounds stated in the relator's information.

We are of the opinion, therefore, that the appellants showed very clearly, in and by the averments of the second paragraph of their answer, that as the directors of either the old or the new corporation, or perhaps of both corporations, they were lawfully possessed of the road in controversy, and of the requisite rights, privileges and franchises under the law, to construct, maintain, operate and use such road. The respective rights of the two corporations, as between themselves or their corporators, in and to such road, is a question we are not asked to decide, and in which, perhaps, the State has no interest. One or the other of the two corporations is the owner, and lawfully entitled to the possession, of the road and its franchises, and the appellants are the duly elected and acting directors of both corporations. Under these facts, which must be taken as true, as the case comes before us, the State was not entitled to a judgment of ouster and exclusion against the appellants; and, therefore, we think that the court erred in sustaining the relator's demurrer to the second paragraph of the appellants' answer.

The views we have expressed, in regard to the liberality which the courts should extend towards such road corporations as the one organized by the appellants in this case, are fortified, strengthened and sustained by the provisions of " An act to legalize defective organizations of corporations in certain cases," approved March 3d, 1877. This act was passed nearly two years after the organization by the appellants of the new corporation, mentioned in the information, and became a law on the 2d day of July, 1877, more than two years prior to the commencement of this suit. Omitting the enacting clause, it was provided in this act as follows:

" That in all cases, where the purchasers of gravel or macadamized roads, at sheriffs' sales, have filed their articles of association for reorganization, in the proper office, but have failed to file such articles within the time limited by law, or where said organizations are imperfect because of omission of any mere matter of form, if the requirements of the law have been substantially complied with, so that the law can be enforced, and the rights of third parties are not injuriously affected, the same are hereby legalized, and such companies shall be held to be regularly incorporated from the date of filing such articles." Acts 1877, Reg. Sess., p. 89.

It was certainly competent for the General Assembly to pass this law ; and, by its enactment, it would seem that the organization by the appellants of their new corporation, at least so far as the State is concerned, was thereby legalized, and that, after the law took effect, the State was not entitled to a judgment of ouster and exclusion against the appellants, upon the grounds specified in the relator's information.

For the reasons given, we think that the court also erred in sustaining the relator's demurrers to the third and fourth paragraphs of the appellants' answer, in which substantially the same facts were pleaded in bar of the information, as in the second paragraph of the answer. Our conclusion in regard to the insufficiency of these paragraphs of answer renders it unnecessary for us to consider the other error complained of, in regard to the judgment rendered by the court.

The judgment is reversed, and the cause is remanded, with instructions to overrule the relator's demurrers to the second, third and fourth paragraph of the appellants' answer, and for further proceedings not inconsistent with this opinion.