No. 8848.

STATE, EX REL. COLLINGS, PROSECUTING ATTORNEY, *v.* BECK ET AL.

CORPORATIONS.—*Information.*—*Quo Warranto.*—An information under the third clause of section 1131, R. S. 1881, is sufficient if it appear therefrom that the defendants pretend to be organized as a corporation, and are exercising corporate powers, when they are not so organized as the law requires.

SAME.—Whether corporators intend, in good faith, to carry out the purposes of their organization, can not be questioned by *quo warranto.*

TURNPIKE COMPANY.—*Organization to Purchase Roads.*—*Statute Construed.*— To organize a turnpike company under the statutes (R. S. 1881, sections 3624 and 3658), there must be a substantial compliance with the requirements prescribed. There can be no such organization for the purpose of purchasing, etc., two or more distinct roads already existing, and owned by different corporations.

State, *ex rel.* Collings, Prosecuting Attorney, *v.* Beck *et al.*

SAME.--*Subscription by Initial of Christian Name.*—Articles of association for the formation of a turnpike company may be subscribed by the corporators, by their usual signatures, and the use of initials to designate their Christian names is not objectionable.

SAME.--*Estoppel.*—That the State has instituted a criminal prosecution for breaking down a toll-gate, described in the indictment as the property of a corporation named, is no bar to an information to contest the valid organization of the supposed corporation.

From the Montgomery Circuit Court.

*G. W. Collings,* Prosecuting Attorney, *G. W. Paul* and *J. E. Humphries,* for appellant.

*P. S. Kennedy, W. T. Brush* and *E. C. Snyder,* for appellees.

BLACK, C.—This was an information, filed on the 9th day of May, 1879, on the relation of the prosecuting attorney, against the appellees, Robert F. Beck and seven others.

The information was in two paragraphs, to each of which the appellees severally demurred. The demurrer was overruled as to each paragraph, and the appellees excepted. The appellees answered in five paragraphs, the third being a general denial. The appellant demurred to the first, second, fourth and fifth paragraphs of the answer. The demurrer was sustained to the fourth and fifth paragraphs, the appellees excepting, and was overruled as to the first and second paragraphs, the appellant excepting. The appellees withdrew their general denial, and the appellant moved for judgment in her favor, upon the state of the pleadings. This motion was overruled, and the appellant excepted. The appellant declined to reply to the first and second paragraphs of answer, and elected to stand by the demurrer thereto, and judgment was thereupon rendered against the appellant for costs, the appellant excepting to the rendering and entering of the judgment.

The appellant has assigned as error the overruling of the demurrer to the first and second paragraphs of the answer, the overruling of the motion for judgment in appellant's favor upon the state of the pleadings, and the rendition of the judg-

ment against the appellant and in favor of the appellees for costs.

There is a cross assignment of errors upon the action of the court in overruling the demurrer to the several paragraphs of the information, and in sustaining the demurrer to the fourth and fifth paragraphs of the answer.

This proceeding is based upon the following statutory provisions:

"An information may be filed against any person or corporation in the following cases: * * * *Third.* Where any association or number of persons shall act within this State as a corporation, without being legally incorporated." 2 R. S. 1876, p. 298, section 749.

" The information may be filed by the prosecuting attorney in the circuit court of the proper county upon his own relation," etc.   2 R. S. 1876, p. 299, section 750.

" The information shall consist of a plain statement of the facts which constitute the grounds of the proceeding addressed to the court."   2 R. S. 1876, p. 299, section 751.

The information is long and somewhat loosely prepared. Upon a careful examination, we conclude that each paragraph alleges with sufficient certainty that the defendants have pretendingly organized themselves as a corporation, under the name of The Crawfordsville and Eastern Turnpike Company, and are acting within this State as a turnpike corporation, particular acts being specified, as erecting toll-gates upon certain roads in Montgomery county, which for many years have been public highways, and exacting toll from travellers thereon, upon a claim of being such corporation.   Each paragraph alleges, in different forms, that the defendants have not been legally incorporated.

The first paragraph alleges many facts which are also set forth in the first and second paragraphs of the answer, and, in view of what we shall say of these paragraphs, we need not further refer to the information.   We think each paragraph thereof stated facts sufficient to constitute a cause of action.

State, *ex rel.* Collings, Prosecuting Attorney, *v.* Beck *et al.*

The appellees in the first and second paragraphs of their answer seek to show that they are legally incorporated as a turnpike company. The statutes with which they attempted to comply are as follows:

"*Be it enacted*," etc., "That any number of persons may form themselves into a corporation for the purpose of constructing or owning plank, macadamized, gravel, clay and dirt roads, by complying with the following requirements: They shall unite in articles of association setting forth the name which they assume, the line of the route, and the place to and from which it is proposed to construct the road, the amount of capital stock, and the number of shares into which it is divided, the names and places of residence of the subscribers, and the amount of stock taken by each, shall be subscribed to said articles of association. Whenever the stock subscribed amounts to the sum of five hundred dollars per mile of the proposed road, copies of the articles of association shall be filed in the office of the recorder of each county through which the road is to pass, and shall from that time be a corporation, known by the name assumed in [its] articles of association." 1 R. S. 1876, p. 654, section 1.

"*Be it enacted*," etc., "That it shall be lawful for any number of persons, not less than three, to form themselves into a company under the act authorizing the construction of plank, macadamized, and gravel roads, for the purpose as well of purchasing and using a part or section of a road already built, or in process of building, as of constructing a new road." 1 R. S. 1876, p. 663, section 1.

The first and second paragraphs of the answer present substantially the same questions. With their exhibits they show that the appellees, on the 16th of November, 1878, subscribed, and on the 6th of December, 1878, filed in the office of the recorder of Montgomery county, articles of association, wherein the subscribers agreed and professed to organize themselves into a joint stock company, under the name of The Crawfordsville and Eastern Turnpike Company, "for

the purpose of purchasing, using, maintaining, operating and extending certain turnpikes or gravel roads, in Montgomery county, State of Indiana, as follows," etc.

Certain " lines of road " and certain " turnpikes " are then mentioned as being those built, owned and operated by certain turnpike companies named, one being The Crawfordsville and Shannondale Consolidated Turnpike Company, said to have been formed by the consolidation, in 1866, of The Crawfordsville and Shannondale Turnpike Company and The Crawfordsville and Darlington Turnpike Company; another being The Crawfordsville and Shannondale Turnpike Company; another The Crawfordsville and Fredericksburg Turnpike Company, and another The Crawfordsville and Darlington Turnpike Company. These lines or turnpikes, and the places to and from which they extend, are described in the articles of association with some indefiniteness, reference being made, for a more minute and particular description, to a map attached and made part of the articles. The amount of capital stock is stated and the number of shares into which it is divided.

Following the body of the articles of association are a number of columns, with proper headings, for the names of subscribers, their places of residence, and the amount of stock taken by each. The amount of capital stock stated in the body of the articles is taken by eight subscribers, being more than five hundred dollars per mile of the roads as described in the articles, with the aid of the map attached.

Under the heading for the names of subscribers, there are four names, of which the Christian names are indicated by initial letters only. For one subscription there are two names connected, thus: "Irvin & Scott." The three other subscribers sign their full names.

It is claimed in both the first and second paragraphs of answer, that the appellees are incorporated as The Crawfordsville and Eastern Turnpike Company, under said articles of association. The first paragraph does not deny that the ap-

pellees are acting as a corporation within this State. The second alleges that The Crawfordsville and Shannondale Turnpike Company, The Crawfordsville and Fredericksburg Turnpike Company, and The Crawfordsville and Darlington Turnpike Company, were each incorporated, showing the manner of the organization of each, and setting out its articles of association; that the first and the last of said three companies, for their mutual benefit and convenience, operated their roads together, under the name of The Crawfordsville and Shannondale Consolidated Turnpike Company; that said companies, respectively, from the dates of their organization, had exercised all the rights, privileges and franchises pertaining and belonging to such corporations; that at a regular meeting of the officers and members of each of said companies, two-thirds of the directors and a majority in value of such stockholders being present in person or by proxy, said companies sold and transferred to said Crawfordsville and Eastern Turnpike Company, their respective roads, with all the rights, privileges and franchises thereunto belonging, and that said last named company thereupon took possession, control and management of the same.

Whether the appellees intended, in good faith, to carry out the expressed purpose of their organization or otherwise, can not be enquired into in this proceeding, though the information seems to be in part directed to such enquiry. *The State, ex rel.,* v. *Kingan,* 51 Ind. 142.

The question for investigation is, whether the appellees are legally incorporated or not, and it is claimed, in their behalf, that they are so incorporated, under the act of May 12th, 1852, as amended, and the act of February 28th, 1855, the first section of each of which is above set out.

It is contended by counsel for the appellant, that, in subscribing the names of stockholders to the articles of association, it was necessary to subscribe their full names, writing their Christian names as well as their surnames.

It is also contended that the appellees have not complied

with the statute, in that their articles of association show the organization to be formed for the purposes alone of "purchasing, owning, maintaining, operating and extending" the roads of a number of distinct turnpike companies.

The statute makes the formation of the corporation dependent upon "complying with the following requirements," etc.

In *Rhodes* v. *Piper*, 40 Ind. 369, the court were clearly of the opinion that it was not only necessary, under this statute, that a corporate name should be assumed, but also that it should be set out in the articles.

In *The State, ex rel.*, v. *The Shelbyville, etc., Turnpike Co.*, 41 Ind. 151, it was held that the statute contemplates a statement of the amount of the capital stock in the body of the articles, in addition to the statement subscribed to the articles of the amount of stock taken by each subscriber.

The requirements of the statute are not merely directory; they are imperative, and one is as imperative and essential as another. They must all be substantially complied with. *Busenback* v. *The Attica, etc., Gravel Road Co.*, 43 Ind. 265. In the case last cited, it was held that the statutory requirement as to "the names and places of residence of the subscribers" is a condition precedent to the legal organization of the corporation, and that it was necessary to thus set forth the place of residence of every subscriber.

Every person is presumed to have a Christian name. *Zellers* v. *The State*, 7 Ind. 659. Initial letters used to indicate Christian names have not, with us, a constant signification, as the initial letter of the prænomen had with the Romans.

In *Vawter* v. *Gilliland*, 55 Ind. 278, it was held that a statute providing for the location of a highway upon a petition to the board of commissioners of the county, setting forth the names of the owners and occupants or agents of the lands through which it might pass, was not complied with where the petition gave the initials only of the Christian names of individual owners of land, and the firm names only of owners in partnership.

It is a well settled principle that where a corporation must be formed under a general statute requiring certain acts to be done before it can be considered in being, its existence, if properly called in question, must be proved by showing compliance with the requirements of the statute. But it is sufficient if a substantial compliance be shown.

There is a wide distinction between a requirement to sign or subscribe one's own name, and a requirement to set forth the name of another person, or to set forth one's own name, not by way of signing or subscribing, to indicate consent or approval. The statute now in question requires, not that the names be set forth in the body of the articles, but that "the names and places of residence of the subscribers and the amount of stock taken by each shall be *subscribed* to said articles of association."

Under a statute requiring the voting paper in an election of councillor of a borough to be "signed with the name of the burgess voting," it was held by the Court of Queen's Bench that papers signed with the initials for Christian names were not thereby made insufficient. *Regina* v. *Avery*, 18 Q. B. 576. One may effectually bind himself by signing his initials to an instrument. *Palmer* v. *Stephens*, 1 Den. 471.

In *Miller* v. *The Wildcat, etc., Co.*, 52 Ind. 51, 59, upon an objection that the articles of association of a corporation formed under the amended statute of 1852, here in question, did not show the residence of the subscribers, it was held that the use of the double comma following the name of a subscriber and under the name of a certain county and the name of the State, designated by a heading as a place of residence, sufficiently indicated the place of residence, for the reason that such use of the double comma is sanctioned by common usage and literary authority. And while of various objections made to the articles, none had reference to the names of subscribers, an extract from the articles set out in the report of the case shows that one of the two subscribers whose names are given in the extract, used initial letters alone to indicate

his Christian name; and, without any question having been made on this ground, the articles were held sufficient.

The indication of Christian names by initials in signing or subscribing names is a common usage.

We think the subscribing of the name required by the statute was intended by the Legislature to be in the subscriber's usual way of signing his name, and that the signatures made by the subscribers in this instance should be presumed to be made in such usual way.

It is not claimed that there had been any legal consolidation of any of the turnpike companies mentioned in the articles of association of The Crawfordsville and Eastern Turnpike Company, though two of the old companies, it is said, were operating their roads together, for material benefit and convenience, under a name indicating a consolidation.

The appellees attempted to organize "for the purposes of purchasing, owning, maintaining, operating and extending" the roads of three distinct turnpike companies. All of the roads run in an easterly direction from Crawfordsville, one of them having a branch running in a northerly direction. As shown by the articles of association, two of them connect with each other at their western *termini*, while the third does not connect with or intersect either of the others at any point. Referring to the statute above quoted, we think that it would be a construction not supported by the words used or the reasonably inferred intent of the Legislature, to say that they permit the organization of a corporation for the purpose expressed in these articles of association.

By the first section of the act of February 28th, 1855, *supra*, it appears that the Legislature did not regard as already existing the power to form a corporation for the purpose of "purchasing and using a part or section of a road already built, or in process of building;" and by that enactment it conferred such power, but not a more extended one.

We are unable to find any statute which we think gives the authority claimed by the appellees. *Garrigus* v. *The*

*Board of Comm'rs, etc.*, 39 Ind. 66; *Green* v. *Beeson*, 31 Ind. 7; *Stoddard* v. *Johnson*, 75 Ind. 20; *Gray* v. *Mount*, 45 Iowa, 591; *Johnson* v. *The Hudson River R. R. Co.*, 49 N. Y. 455; *Shue* v. *Highway Commissioner*, 41 Mich. 638; *People* v. *Troy House Co.*, 44 Barb. 625; *The New York, etc., Co.* v. *Fulton Bank*, 7 Wend. 412; *Arnold* v. *The City of Cambridge*, 106 Mass. 352; *Frye* v. *Chicago, etc., R. R. Co.*, 73 Ill. 399.

It being shown by the first and second paragraphs of the answer, that the appellees are organized for an unauthorized purpose, those paragraphs were insufficient.

The fourth paragraph of the answer alleged, in substance, that, in 1879, the State commenced and waged, in the Montgomery Circuit Court, with what result is not stated, a prosecution by information, against one Harrison Flannagan, upon a charge of breaking down a certain toll-gate, alleged in said information to be the property of The Crawfordsville and Eastern Turnpike Company, and that the State recognized the appellees as a corporation.

The fifth paragraph alleges a prosecution before a justice of the peace against another person, on a charge of maliciously injuring a toll-house, the property of said company, to which the defendant pleaded guilty; and that he was fined. And it is claimed that, therefore, the State is estopped to deny the existence of the corporation.

The appellees have not attempted to offer any authority or any reason in favor of these paragraphs or either of them, and it does not seem necessary to offer any against them. There was no error in sustaining the demurrer to each of these paragraphs.

No other questions need be noticed, as we think the judgment should be reversed for error in overruling the demurrer to the first and second paragraphs of the answer.

PER CURIAM.—It is therefore ordered by the court, upon the foregoing opinion, that the judgment of the court below be and the same is in all things reversed, at the costs of the appellees, and the cause remanded, with instructions to sustain the demurrer to the first and second paragraphs of the answer.