The Crawfordsville and Darlington T. P. Co. v. The State, ex rel. Howard.

No. 12,398.

THE CRAWFORDSVILLE AND DARLINGTON TURNPIKE COM-
PANY v. THE STATE, EX REL. HOWARD, PROSECUTING
ATTORNEY.

CORPORATION.—Turnpike Company.—Extensions.—Void Consolidation.—Effect
as to Rights of Company.—Where two turnpike companies, under an at-
tempted consolidation, are controlled by a common management for
many years, without objection, and then, by legal proceedings, such con-
solidation is declared void, each company may assume control of its
original road and franchises, and also of an extension of such original
road, for the construction of which articles of association and subscrip-
tions to capital stock were made by the individual company, although
the right of way for such extension was petitioned for by, and granted
to, the consolidated company.

From the Montgomery Circuit Court.

G. W. Paul, J. E. Humphries, P. S. Kennedy and S. C.
Kennedy, for appellant.

J. H. Burford, W. H. Thompson and W. B. Herod, for
appellee.

HOWK, J.—This was an information in the nature of a
quo warranto, filed by the appellee's relator, Frank M. How-
ard, Esq., as the prosecuting attorney of the twenty-second
judicial circuit, against the appellant the Crawfordsville and
Darlington Turnpike Company, as sole defendant. The cause
was put at issue and tried by the court, and, at the appellant's
request, the court made a special finding of the facts, and
stated its conclusion of law thereon, in favor of the appel-
lee's relator. Over the appellant's exceptions to the conclu-
sion of law, the court rendered a judgment and decree in
favor of appellee's relator, as prayed for in his information.

In this court, the appellant's counsel first complain, in ar-
gument, of the alleged error of the trial court in its conclu-
sion of law upon its special finding of facts.

The facts found by the court were substantially as follows:
The Crawfordsville and Darlington Turnpike Company was,
at the commencement of this suit, a duly organized turn-

pike company, and doing business as such, and was incorporated in Montgomery county, on the 31st day of August, 1865. The appellant was incorporated for the purpose of constructing, owning and operating a turnpike and gravel road over and on the following line of public highway, to wit: Beginning at the east corporation line of the city of Crawfordsville, on Market street, and running thence east and northerly to the eastern terminus of the Crawfordsville and Shannondale turnpike, and running thence north and easterly over the old highway for a distance of about five miles, on the road leading to the town of Darlington, in such county. Such line of road is the only line of road mentioned or described in the original articles of incorporation of the appellant. On the 19th day of October, 1866, the appellant pretended to organize a consolidated turnpike company, by consolidating with the Crawfordsville and Shannondale Turnpike Company, a gravel road corporation duly and regularly organized, and owning and operating a distinct line of road, in such county, whose road connected with appellant's road. Such intended consolidated corporation assumed the name and style of the "Crawfordsville and Shannondale Consolidated Turnpike Company," and, under that name, operated such lines of turnpike and gravel road until the 16th day of November, 1878, at which time such last named company transferred all its rights, properties and franchises to a new and separate organization, styling itself the "Crawfordsville and Eastern Turnpike Company."

Such attempted turnpike company, the Crawfordsville and Eastern Turnpike Company, operated such lines of road as a turnpike, and collected tolls from travellers over and upon the line of road known as the Crawfordsville and Darlington turnpike, until the month of August, 1882, when it abandoned its new organization and style, and assumed all its rights in and to the Crawfordsville and Darlington turnpike, the road and highway described in the original articles of association of the appellant corporation. From October 19th,

1866, to August, 1882, the appellant did not act as a corpo-
ration. On the 6th day of September, 1867, after the appel-
lant had transferred its property and rights to the attempted
consolidated turnpike company, and after the appellant had
ceased to act as a turnpike company, the Crawfordsville, Shan-
nondale and Darlington Consolidated Turnpike Company, by
that name, presented its petition in writing to the board of
commissioners of Montgomery county, praying such board
to grant the right of way to such company to construct a
branch extension of its road on and over the public highway,
as follows, to wit: Beginning at the center of the Crawfords-
ville and Darlington turnpike, on the S. E. corner of the W.
half of the S. E. quarter of section 21, township 19 north,
of range 4 west, thence running west on the section line one-
half mile, thence over the highway known as the Hill's Fac-
tory road until it intersected the old Spader's mill road lead-
ing to Crawfordsville, and thence over such road, as then
travelled, to its intersection with the Crawfordsville, Shan-
nondale and Darlington turnpike road. At the September
term, 1867, of such board of commissioners, the following
order was made on such petition, to wit: "And the board,
after being advised, grants the right of way to said company
over the road described in such petition, upon the condition
that such company shall execute a bond, in a penalty of one
thousand dollars, payable to the board of commissioners of
Montgomery county, Indiana, conditioned for the keeping in
good repair, and in safe and passable condition, the road de-
scribed in such petition, during the whole time such company
may be constructing a turnpike thereon."

The foregoing grant is the only grant of the right of way
over the line of road therein described ever made by the
board of commissioners of Montgomery county to any turn-
pike company or corporation, prior to the commencement of
this suit. There never was any such corporation, turnpike
or gravel road company, as that named in the aforesaid pe-
tition. At the time such grant was made the appellant cor-

poration was not operating any line of road, collecting any tolls, or doing any other act as a turnpike company. There was a line of gravel road constructed on and over the line of highway described in such petition, which was constructed by the pretended Crawfordsville and Shannondale Consolidated Turnpike Company, in the year 1868. The appellant corporation, as a separate and individual organization, never made any claim to, nor pretended to own or operate, such line of road described in such grant, until August, 1882. The line of road described in such petition and grant was a public highway, and had so been for over twenty years prior to such grant, and had been so used ever since. The appellant corporation, on or about the 20th day of August, 1882, took possession of such highway and turnpike, and assumed control thereof, and since that date, and until the institution of this suit, had been collecting tolls from travellers and citizens of such county who travelled thereon, had maintained toll-gates across and upon such highway and turnpike, and had exercised all the rights of a gravel road company on and over such highway and turnpike, under its original articles of association. Such road had been a public highway continuously for over fifty years, and was largely travelled by persons going to and from the city of Crawfordsville, in Montgomery county.

Such line of road and public highway was not included in the original articles of association of the appellant. The appellant never at any time obtained from the board of commissioners of such county a grant of the right to construct a toll-road or turnpike upon such highway, other than that set out above. Such toll-gates are obstructions to such public highway, and to the free use thereof and travel thereon. The Crawfordsville and Darlington Turnpike Company and the Crawfordsville and Shannondale Turnpike Company built their roads, as described in their original articles of association, and, on the 19th day of November, 1866, the two corporations attempted to consolidate under the name of the

Crawfordsville and Shannondale Consolidated Turnpike Company, and such consolidated company took possession of such roads, and held and operated them until the 18th day of December, 1878, when such consolidated company joined with the Crawfordsville and Fredericksburg Turnpike Company and attempted to consolidate the two companies under the name of the Crawfordsville and Eastern Turnpike Company, and such company operated such roads until August, 1882, when the consolidation was abandoned, and the original corporations elected officers for the old corporations and took possession of such roads. The Crawfordsville and Shannondale Consolidated Turnpike Company, claiming the right to such highway under such grant, took possession thereof and constructed a turnpike thereon and operated the same. The grant as found herein was petitioned for by V. Q. Irwin, Esq., as president of the Crawfordsville and Shannondale Consolidated Turnpike Company. On the 6th day of September, 1867, the appellant corporation, by its stockholders, entered into the following articles of association, to wit:

"Articles of association of the Crawfordsville and Darlington Turnpike Company, for the extension of such turnpike as herein below specified. The above named company covenants and agrees to add to and extend the Crawfordsville and Darlington Turnpike as follows, to wit: Beginning in the center of the Darlington turnpike, at the southeast corner of the west half of the southeast quarter of section 21, township 19 north, of range 4 west; thence running west on the section line one-half mile; thence over the highway known as the Hill's Factory road until it intersects the old Spader's mill road leading to Crawfordsville; thence over said road, as now travelled, to where it intersects the Crawfordsville, Shannondale and Darlington turnpike road; that in the construction and management of such extension, the above named company will be subject to all the rules and regulations, rights and obligations, claimed and assumed in the above articles of association; that the route of such pro-

posed extension of said turnpike is about two and one-half miles in length; that in the construction and management of said extension we will employ a capital stock of $5,000, which amount we hereby add to above amount of capital stock heretofore subscribed, divided into two hundred shares of $25 for each share of stock, to be paid and payable as prescribed in above original articles of association." (These articles of association for the proposed extension of appellant's turnpike were subscribed by five persons, as stockholders, all residing at Crawfordsville and each subscribing for forty shares of stock. We omit their names, etc.)

Upon the foregoing facts, the court stated the following conclusions of law:

" 1. Defendant has no right to maintain the toll-gate on or across the Hill's Factory road, described in the complaint.

" 2. The plaintiff is entitled to an injunction, as prayed for in the complaint."

From the court's special finding of facts, the substance of which we have given, it is manifest that this cause, like the cases of *State, ex.rel.,* v. *Crawfordsville and Shannondale Turnpike Co., ante,* p. 283, and *State, ex rel.,* v. *Crawfordsville and Darlington Turnpike Co., post,* p. 600, had its origin in the opinion of this court in *State, ex rel.,* v. *Beck,* 81 Ind. 500.

In the case last cited it was substantially held by this court that the attempted consolidation of certain turnpike corporations, theretofore lawfully organized and existing in Montgomery county, and the attempted formation of a consolidated corporation under an assumed corporate name, were not authorized by any statute of this State, and were therefore void. The consolidation seems to have been attempted solely for the purpose of placing the control and management of the roads of the respective corporations under one common board of directors, with a single set of officers. There does not seem to have been any intention, on the part of either of the original corporations or of the stockholders thereof, to abandon

their corporate property or to surrender their corporate rights and franchises. When the opinion of this court in *State, ex rel.*, v. *Beck, supra,* was announced, of course the attempted organization of a consolidated corporation ceased and was at once abandoned. Each of the original corporations, parties to such attempted consolidation, with the consent of the others and of the stockholders thereof respectively, at once assumed the possession and control of its turnpike and other property, which, at heavy cost, it had constructed many years before, and, also, assumed to exercise over such road and property its rights, privileges and franchises, under the law, as a turnpike company. This, the trial court decided, each of the original corporations, after the termination of the attempted consolidation, had the right to do, and, upon appeal, this court at its present term affirmed such decisions, in the two cases above cited. These decisions, we think, were manifestly just and right, and in harmony with our previous cases involving similar questions. *Moore* v. *State, ex rel.*, 71 Ind. 478; *Smelser* v. *Wayne, etc., Turnpike Co.*, 82 Ind. 417; *State, ex rel.*, v. *St. Paul, etc., Turnpike Co.*, 92 Ind. 42.

In the case at bar the trial court found as a fact that the appellant, at the commencement of this suit, was a duly organized turnpike company, and doing business as such, in Montgomery county, and that it was in the possession of, and exercising corporate power over, the extension of its road in controversy in this action. But the court seems to have rested its conclusions of law and its judgment against the appellant upon the following facts: 1. That the extension of its turnpike, now in controversy, was not mentioned or described in the original articles of association of the appellant corporation; and, 2. That the petition to the board of county commissioners for the right of way over the public highway, on and over which such extension was constructed, was presented in the assumed name of the attempted consolidated company by its president, and the grant of such right of way was in

fact made by such county board to such attempted consolidated company, and *not* to the appellant corporation.

We are of opinion, however, that these facts are insufficient, and especially so when considered in conjunction with other facts found, to authorize the court's conclusions of law and judgment.   For, although the court found that the right of way over the highway for the proposed extension of turnpike, was granted by the county board to the attempted consolidated company by its assumed name; yet it was also found that the appellant corporation alone made the necessary articles of association, and procured the requisite subscription to its capital stock for the construction of the extension of turnpike over such highway now in controversy, and that such extension was in fact an extension of the turnpike owned and held by the appellant alone before the consolidation was attempted.   It seems to us, that when the attempted consolidation was abandoned, the appellant had the right, upon the facts found by the court, to take possession and control, not alone of its original road, but also of the extension of such road now in controversy, and to exercise over both the original road and its extension all the rights, privileges and franchises of a turnpike corporation, under the law.   This is what the appellant was doing when this suit was commenced; and we are unable to see wherein or how the State has been prejudiced or injured by the acts or conduct of the appellant, in the premises.   For more than one year prior to the institution of this suit the appellant had been in the exclusive possession and control of the extension of its road now in controversy, and if, in the meantime, the rights of the public or the interests of the State have suffered in any manner, by or through the acts of the appellant, the facts are not found by the court.

We conclude, therefore, that the trial court has erred in its conclusions of law, and that, in lieu thereof, it ought to have found for the appellant.

The judgment is reversed, and the cause is remanded with

instructions to the court to set aside its conclusions of law and, in their stead, to state its conclusion of law in accordance with this opinion, and render judgment accordingly.

Filed June 26, 1885.